**Fill in this information to identify the case:**

United States Bankruptcy Court for the:

SOUTHERN DISTRICT OF FLORIDA

Case number *(if known)* _____   Chapter **7**

☐ Check if this an
   amended filing

Official Form 205

# Involuntary Petition Against a Non-Individual                    12/15

Use this form to begin a bankruptcy case against a non-individual you allege to be a debtor subject to an involuntary case. If you want to begin a case against a non-individual, use the *Involuntary Petition Against an Individual* (Official Form 105). Be as complete and accurate as possible. If more space is needed, attach any additional sheets to this form. On the top of any additional pages, write debtor's name and case number (if known).

**Part 1:    Identify the Chapter of the Bankruptcy Code Under Which Petition Is Filed**

1. **Chapter of the Bankruptcy
   Code**                        *Check one:*

                                 ☑ Chapter 7
                                 ☐ Chapter 11

**Part 2:    Identify the Debtor**

2. **Debtor's name**        ONE57 79 Inc, a New York corporation

3. **Other names you
   know the debtor
   has used in the last
   8 years**

   Include any
   assumed names,
   trade names, or
   *doing business as*
   names.

4. **Debtor's federal Employer
   Identification Number (EIN)**    ☑ Unknown

                                    EIN _____

5. **Debtor's address**

   | Principal place of business | Mailing address, if different |
   |---|---|
   | Busch & Caspino (Reg Agt) | 3329 Flamingo Dr |
   | Street | Number          Street |
   | 2532 Dupont Dr | |
   | **Irvine**          CA          92612 | P.O. Box |
   | City          State          Zip Code | Miami Beach          FL 33140 |
   | | City          State          Zip Code |
   | County | **Location of principal assets, if different from principal place of business** |
   | | Number          Street |
   | | Miami          FL |
   | | City          State          Zip Code |

6. **Debtor's website** (URL)    _____

7. **Type of debtor**        ☑ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))
                             ☐ Partnership (excluding LLP)
                             ☐ Other type of debtor. Specify: _____

8. **Type of debtor's**      *Check one:*

Software Copyright (c) 1996-2017 Best Case, LLC - www.bestcase.com

Debtor _____        Case number (if known) _____

**business**

- ☐ Health Care Business (as defined in 11 U.S.C. § 101(27A)
- ☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B)
- ☐ Railroad (as defined in 11 U.S.C. § 101(44)
- ☐ Stockbroker (as defined in 11 U.S.C. § 101(53A)
- ☐ Commodity Broker (as defined in 11 U.S.C. § 101(6)
- ☐ Clearing Bank (as defined in 11 U.S.C. § 781(3)
- ☑ None of the types of business listed.
- ☐ Unknown type of business.

| | | | |
|---|---|---|---|
| 9. | To the best of your knowledge, are any bankruptcy cases pending by or against any partner or affiliate of this debtor? | ☐ No<br>☑ Yes. Debtor | **Earnshaw Associates Limited, a British Virgin Islands Corporation** |

          Relationship     parent company

District    Southern     Date filed   7/3/17     Case number, if known   17-18432 RAM
                                        MM / DD / YYYY

Debtor _____    Relationship _____
District _____    Date filed _____    Case number, if known _____
                                          MM / DD / YYYY

**Part 3:    Report About the Case**

**10.    Venue**    Check one:

- ☐ Over the last 180 days before the filing of this bankruptcy, the debtor had a domicile, principal place of business, or principal assets in this district longer than in any other district.
- ☑ A bankruptcy case concerning debtor's affiliates, general partner, or partnership is pending in this district.

**11.    Allegations**    Each petitioner is eligible to file this petition under 11 U.S.C. § 303(b).
The debtor may be the subject of an involuntary case under 11 U.S.C. § 303(a).

*At least one box must be checked:*

- ☑ The debtor is generally not paying its debts as they become due, unless they are in the subject of a bona fide dispute as to liability or amount.
- ☐ Within 120 days before the filing of this petition, a custodian, other than a trustee, receiver, or agent appointed or authorized to take charge of less than substantially all of the property of the debtor for the purpose of enforcing a lien against such property, was appointed or took possession.

**12.    Has there been a transfer of any claim against the debtor by or to any petitioner?**
- ☐ No
- ☑ Yes. Attach all documents that evidence the transfer and any statements required under Bankruptcy Rule 1003(a).

**13.    Each petitioner's claim**

| Name of petitioner | Nature of petitioner's claim | Amount of the claim above the value of any lien |
|---|---|---|
| Campion Maverick Inc., | | $ **100,000 +** |
| | | $ |
| | | $ |
| | Total of petitioners' claims | $ |

**If more space is needed to list petitioners, attach additional sheets. Write the alleged debtor's name and the case number, if known, at top of each sheet. Following the format of this form, set out the information required in Parts 3 and 4 of the form for each statement under penalty of perjury set out in Part 4 of the form, followed by each additional petitioner's (or representative's) signature, along with the signature of the petitioner's attorney.**

**Part 4    Request for Relief**

**WARNING** -- Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

Debtor _____     Case number *(if known)* _____

Petitioners request that an order for relief be entered against the debtor under the chapter of 11 U.S.C. specified in this petition. If a petitioning creditor is a corporation, attach the corporate ownership statement required by Bankruptcy Rule 1010(b). If any petitioner is a foreign representative appointed in a foreign proceeding, attach a certified copy of the order of the court granting recognition.

I have examined the information in this document and have a reasonable belief that the information is true and correct.

| Petitioners or Petitioners' Representative | Attorneys |
|---|---|

**Name and mailing address of petitioner**

**Campion Maverick Inc.**
Name

**9551 East Bay Harbor Dr**

Number      Street
**Bay Harbor**              **FL**         **33154**
City                            State         Zip Code

**Name and mailing address of petitioner's representative, if any**

**Anjum Mahmood**
Name

**5 Walnut Dr**

Number      Street
**Pinebrook**               **NJ**         **07058**
City                            State         Zip Code

I declare under penalty of perjury that the foregoing is true and correct.

Executed on    **07/03/2017**
                     MM / DD / YYYY


Signature of petitioner or representative, including representative's title

---

**Joel M. Aresty**
Printed name

**Joel M. Aresty P.A.**
Firm name, if any
**930  1st Avenue S**

Number      Street
**TTierra Verde**           **FL**         **33715**
City                            State         Zip Code
Contact phone    **305-904-1903**    Email    **aresty@mac.com**

Bar number    **197483**

State              **Florida**


**s/s: Joel M. Aresty**
Signature of attorney
Date signed    **07/01/2017**
                     MM / DD / YYYY

---

Software Copyright (c) 1996-2017 Best Case, LLC - www.bestcase.com

United States Bankruptcy Court
Southern District of Florida
www.flsb.uscourts.gov

Case Number:
Chapter: 7
Involuntary

In re
ONE57 79 Inc,
a New York corporation
Alleged Debtor
_____/

FRBP 1003(a) Statement

Petitioning Creditor, Campion Maverick Inc., in accordance with Rule 1003(a), states it is a transferee of a claim and annexes to the original and each copy of the petition a copy of all documents evidencing the transfer.

The claim was transferred unconditionally, and the claim was not transferred for the purpose of commencing the involuntary case.

The consideration for and terms of the transfer was to finance the collection of the debt in return for a 33% share in collections and to return the balance to transferor.

Campion Maverick Inc.

by
_____
Anjum Mahmood

JOEL M. ARESTY, P.A.
Attorneys for Petitioning Creditor
309 1st Ave S
Tierra Verde FL 33715
Fax: 800-559-1870
Phone: (305) 904-1903
Aresty@Mac.com
By:/s/ Joel M. Aresty, Esq
Fla. Bar No. 197483

Campion Exhibit Index

1. 9/2012 contract La Chorale and Ark Exploration
2. 10/20/2012 Debt settlement
3. 6/28/15 guaranty of Earnshaw to debt settlement
4. 6/28/15 guaranty One57 79 Inc to NH
5. 11/20/15 La Choral assigns to NH Consulting
6. 6/13/17 Earnshaw confession of judgment to NH
7. 6/20/17 assignment NH Earnshaw to Campion
8. 6/20/17 assignment of NH One 57 79 to Campion

---

**CONTRAT n° LCCI 002 – 2012**
**COMMERCIALISATION**
**60 000 MT JET A1**
**20 000 MT MOGAS 91**

---

**Date : Septembre 2012**

ENTRE

**LA CHORALE**

ET

**ARK EXPLORATION AND PRODUCTION HOLDINGS LTD**

PAR LE PRESENT CONTRAT N° **LCCI 002 – 2012**

**ENTRE LES SOUSSIGNEES :**

**LA CHORALE**, SOCIETE DE DROIT IVOIRIEN AU CAPITAL 1 500 000 FCFA AYANT SON SIEGE SOCIAL A ABIDJAN-COCODY, RIVIERA LES JARDINS, BP 178 CIDEX 03 ABIDJAN, REPRESENTEE PAR MONSIEUR HERVE NDOBA, EN SA QUALITE DE GERANT, DUMENT HABILITE A L'EFFET DES PRESENTES,

(CI-APRES DENOMMEE « **LA CHORALE** » OU LE « **VENDEUR** »)

**D'UNE PART,**

**ET :**

**ARK EXPLORATION AND PRODUCTION HOLDINGS LTD**, AYANT SON SIEGE SOCIAL A OMAR HODGE BUILDING, 325 WATERFRONT DRIVE, 2ND FLOOR, WICKHAM'S CAY 1, ROAD TOWN TORTOLA, BRITISH VIRGIN ISLANDS, REPRESENTEE PAR MONSIEUR KOLAWOLE ALUKO, DUMENT HABILITE A L'EFFET DES PRESENTES

(CI-APRES DENOMMEE «**ARK EXPLORATION AND PRODUCTION HOLDINGS LTD** » OU L' « **ACHETEUR** »)

**D'AUTRE PART,**

LE VENDEUR ET L'ACHETEUR SONT  DESIGNES CI-APRES CHACUN UNE « **PARTIE** » OU ENSEMBLE LES « **PARTIES** ».

**IL EST PREALABLEMENT EXPOSE CE QUI SUIT :**

LA CHORALE EST PROPRIETAIRE OU DISPOSE DU DROIT DE VENDRE EN SON NOM EN ASSUMANT L'INTEGRALITE DES DROITS ET OBLIGATIONS D'UN VENDEUR, DE CERTAINES QUANTITES CORRESPONDANT A DES LOTS DE PRODUITS PETROLIERS ET QU'ELLE SERAIT DISPOSEE A VENDRE A L'ACHETEUR AUX TERMES ET CONDITIONS DU PRESENT CONTRAT (LE « **CONTRAT DE COMMERCIALISATION** »).

**EN CONSEQUENCE, IL A ETE CONVENU CE QUI SUIT :**

**ARTICLE 1 –    OBJET**

LE VENDEUR S'ENGAGE A VENDRE ET A LIVRER OU FAIRE LIVRER A L'ACHETEUR, ET L'ACHETEUR S'ENGAGE A ACHETER ET A PAYER AU VENDEUR LES PRODUITS

2

PETROLIERS SELON LES TERMES ET CONDITIONS DU PRESENT CONTRAT DE COMMERCIALISATION.

## ARTICLE 2 –    QUALITE

A – MOGAS 91, SELON LES SPECIFICATIONS EXPORTS USUELLES SIR
B – JET A1, SELON SPECS INTERNATIONAL DEFSTAN 91-91 DERNIERE EDITION AFQRJOS ISSUE 25 AVEC FLASH MIN 45 DEG. C

## ARTICLE 3 –    QUANTITE

A – 60 000 TM +/- 5% - OPTION VENDEUR
B – 20 000 TM +/- 5% - OPTION VENDEUR

## ARTICLE 4 –    LIVRAISON

LA LIVRAISON SERA EFFECTUEE EN UN LOT FRANCO A BORD (FOB), PORT SÛR ET ACCESSIBLE/QUAI SÛR ET ACCESSIBLE ABIDJAN (SANS CHARGE POUR L'ACHETEUR), DANS LE CADRE DU PRESENT CONTRAT, DURANT LA PERIODE DU 13-15/09/2012 (LAYCAN OFFICIEL A CONFIRMER PAR NOTRE STRUCTURE OPERATIONS) SUR LE TBN / TBN / SUBS, A DESTINATION DU TBA FOR ORDERS.

## ARTICLE 5 – PRIX

5.1 MOGAS
LE PRIX, FOB (FREE ON BOARD) ABIDJAN, EXPRIME EN US DOLLARS PAR TONNE METRIQUE (VACUUM), SUR LA QUANTITE INDIQUEE AU CONNAISSEMENT SERA CALCULE SELON LA FORMULE SUIVANTE :
PRIX : P EN USD/TM = A+B   OÙ:

A = LA MOYENNE DES COTATIONS MOYENNES EFFECTIVES DU PREM UNL 10 PPM, PUBLIEES PAR LE PLATT'S EUROPEAN MARKETSCAN PENDANT LA  PERIODE DE PRICING, SOUS LA RUBRIQUE FOB MED BASIS ITALY.

B = 23.00 USD/TM (DIFFERENTIEL USD/TM FIXE)
P = MEAN FOB MED BASIS ITALY PREM UNL 10 PPM + (PLUS) 23.00 USD/TM
PRICING : LA FORMULE CONTRACTUELLE SERA CALCULEE SUR LA MOYENNE DES COTATIONS  DU 09 AU 18 SEPTEMBRE 2012 (LES DEUX DATES INCLUSES).
LE PRIX SERA EXPRIME A DEUX DECIMALES PRES.

5.2 JETA1
LE PRIX, FOB (FREE ON BOARD) ABIDJAN, EXPRIME EN US DOLLARS PAR TONNE METRIQUE (VACUUM), SUR LA QUANTITE INDIQUEE AU CONNAISSEMENT SERA CALCULE SELON LA FORMULE SUIVANTE :
PRIX : P EN USD/TM = A+B OÙ:



3

A = LA MOYENNE DES COTATIONS MOYENNES EFFECTIVES DU JET PUBLIEES PAR LE PLATT'S EUROPEAN MARKETSCAN PENDANT LA PERIODE DE PRICING, SOUS LA RUBRIQUE CARGOES CIF NWE/BASIS ARA 3/12
B = 21.00 USD/TM (DIFFERENTIEL USD/TM FIXE)
SOIT P = MEAN CIF NWE BASIS ARA JET + (PLUS) 21.00 USD/TM
PRICING : LA FORMULE CONTRACTUELLE SERA CALCULEE SUR LA MOYENNE DES COTATIONS  DU 09 AU 18 SEPTEMBRE 2012 (LES DEUX DATES INCLUSES).
LE PRIX SERA EXPRIME A DEUX DECIMALES PRES.
NB : LES QUANTITES FACTUREES SONT LES QUANTITES NETTES FIGURANT SUR LE CONNAISEMENT.


## ARTICLE 6 – PAIEMENT

EN US DOLLAR PAR CREDIT DOCUMENTAIRE IRREVOCABLE ET CONFIRME NON TRANSFERABLE OUVERT AUPRES D'UNE BANQUE DE PREMIER ORDRE, A BL+10 (LETTRE DE CREDIT A OUVRIR AU PLUS TARD 5 JOURS AVANT LA PERIODE DE CHARGEMENT).
SI LA DATE DE PAIEMENT TOMBE UN SAMEDI OU JOUR NON BANCABLE A NEW YORK, AUTRE QUE LUNDI, LE PAIEMENT SERA EFFECTUE LE JOUR BANCABLE IMMEDIATEMENT PRECEDENT. SI LA DATE DE PAIEMENT TOMBE UN DIMANCHE OU UN LUNDI JOUR NON BANCABLE A NEW YORK, LE PAIEMENT SERA EFFECTUE LE JOUR BANCABLE SUIVANT.


## ARTICLE 7 – INSPECTION

L'INSPECTION SERA EFFECTUEE PAR UN INSPECTEUR INDEPENDANT NOMME PAR L'ACHETEUR ET PAR LE VENDEUR POUR LA DETERMINATION DE LA QUANTITE ET DE LA QUALITE AU PORT DE  CHARGEMENT (SELON LES PRATIQUES USUELLES AU PORT DE CHARGEMENT).
LES QUANTITES ET QUALITES TELLES QUE DEFINIES ET ANALYSEES PAR L'INSPECTEUR INDEPENDANT LIERONT LES DEUX PARTIES, SAUF FRAUDE OU ERREUR MANIFESTE.
LES COUTS SERONT PARTAGES 50/50 ENTRE L'ACHETEUR ET LE VENDEUR.
LES QUANTITES EN TONNES METRIQUES (IN VACUUM) PORTEES AU CONNAISSEMENT SERONT LES QUANTITES FACTUREES.


## ARTICLE 8 – TEMPS DE PLANCHE

SE REFERER AU DOCUMENT « NOTIFICATION OF VESSEL ACCEPTATION » 4/12  DU NAVIRE M/T CPO SWEDEN (VOIR EXEMPLE EN ANNEXE)


## ARTICLE 9 – REGLES ISPS (ISPS COMPLIANCE)

CONDITIONS APPLICABLES AU NAVIRE TRANSPORTEUR (LIVRAISON FOB) LE NAVIRE AFFRETE PAR L'ACHETEUR DOIT SATISFAIRE AUX PRESCRIPTIONS DU



4

CODE INTERNATIONAL POUR LA SURETE DES NAVIRES ET DES INSTALLATIONS PORTUAIRES COMMUNEMENT APPELE ISPS COMPLIANCE.

OBLIGATIONS DE L'ACHETEUR :
POUR CHAQUE NAVIRE:

A) L'ACHETEUR SE PORTE GARANT DE CE QUE LE PROPRIÉTAIRE DU NAVIRE OU SON AFFRÉTEUR COQUE NUE EST MEMBRE DE L'INTERNATIONAL TANKER OWNERS POLLUTION FEDERATION LIMITED (ITOPF) ET LE RESTE POUR TOUTE LA DURÉE DU VOYAGE JUSQU'AU TERMINAL DE CHARGEMENT.

L'ACHETEUR S'ENGAGE À FAIRE TOUT SON POSSIBLE POUR S'ASSURER QUE :
(I) UN CERTIFICAT EN COURS DE VALIDITÉ, CONFORME À LA CONVENTION INTERNATIONALE SUR LA RESPONSABILITÉ CIVILE POUR LES DOMMAGES DUS A LA POLLUTION PAR LES HYDROCARBURES DE 1969 OU (LORSQU'IL EST EN VIGUEUR) AU PROTOCOLE DE 1992 LA MODIFIANT ET À SES AMENDEMENTS EN VIGUEUR, SE TROUVE À BORD DU NAVIRE ;
(II) LE NAVIRE FAIT PARTIE D'UN P & I CLUB QUI EST MEMBRE DE L'INTERNATIONAL GROUP OF P & I CLUBS ET LE RESTE POUR TOUTE LA DURÉE DU VOYAGE JUSQU'AU TERMINAL DE CHARGEMENT ET DU VOYAGE EFFECTUÉ AU DÉPART DU TERMINAL DE CHARGEMENT ;
(III) LE NAVIRE EST COUVERT PAR UNE ASSURANCE, ET CE POUR TOUTE LA DURÉE DU VOYAGE JUSQU'AU TERMINAL DE CHARGEMENT ET DU VOYAGE EFFECTUÉ AU DÉPART DU TERMINAL DE CHARGEMENT, COUVRANT LE RISQUE DE POLLUTION POUR UN MONTANT QUI NE DOIT PAS ÊTRE INFÉRIEUR À LA PLUS HAUTE COUVERTURE STANDARD DISPONIBLE POUR LE RISQUE DE POLLUTION SELON LES RÈGLES DE L'INTERNATIONAL GROUP OF P AND I CLUBS.

B) L'ACHETEUR VEILLE A CE QUE:
(I) LE NAVIRE  SE CONFORME AUX DISPOSITIONS DU CODE INTERNATIONAL  DE GESTION POUR LA SÉCURITÉ DE L'EXPLOITATION DES NAVIRES ET POUR LA PRÉVENTION DE LA POLLUTION (CODE ISM), DU CODE INTERNATIONAL POUR LA SÛRETÉ DES NAVIRES ET DES INSTALLATIONS PORTUAIRES ET DES AMENDEMENTS APPROPRIÉS DU CHAP. XI DE LA CONVENTION SOLAS (CODE  ISPS) ET, SI LE PORT DE CHARGEMENT EST SITUÉ AUX ETATS-UNIS D'AMÉRIQUE 5/12 OU EN TERRITOIRE AMÉRICAIN, DU UNITED STATES MARITIME TRANSPORTATION SECURITY ACT 2002 (MTSA) ;
(II) LES DOCUMENTS SUIVANTS EN COURS DE VALIDITÉ SOIENT CONSERVÉS À BORD DU NAVIRE: UN EXEMPLAIRE DE L'ATTESTATION DE CONFORMITÉ DÉLIVRÉE À LA " COMPAGNIE" (AU SENS DU CODE ISM), LE CERTIFICAT DE  GESTION DE LA SÉCURITÉ DU NAVIRE, LE CERTIFICAT INTERNATIONAL DE  SÛRETÉ DU NAVIRE, AINSI QUE DE TOUS AUTRES CERTIFICATS ET DOCUMENTS  REQUIS PAR LE CODE ISM, LE CODE ISPS, LA CONVENTION SOLAS DE 1974 ET SES  AMENDEMENTS EN VIGUEUR ET, LE CAS ÉCHÉANT, LE MTSA ;
(III) LE NAVIRE FASSE PARVENIR, DÈS QU'IL EN REÇOIT LA DEMANDE, UNE DÉCLARATION DE SÛRETÉ AUX AUTORITÉS COMPÉTENTES AVANT D'ARRIVER AU PORT DE CHARGEMENT.

C) NONOBSTANT TOUTE ACCEPTATION PRÉALABLE DU NAVIRE PAR LE VENDEUR, SI À UN MOMENT QUELCONQUE LE NAVIRE N'EST PAS EN CONFORMITÉ AVEC LES DISPOSITIONS DES PARAGRAPHES A), B) ET C) CI-DESSUS, LE VENDEUR EST EN DROIT À TOUT MOMENT DE REFUSER DE FAIRE ACCOSTER OU DÉCHARGER LE NAVIRE, OU D'INTERROMPRE LE CHARGEMENT DU NAVIRE, ET LE RETARD EN RÉSULTANT NE SERA PAS PRIS EN COMPTE POUR LE DÉCOMPTE DU TEMPS DE PLANCHE OU, SI LE NAVIRE EST EN SURESTARIES, DES SURESTARIES.
L'ACHETEUR A L'OBLIGATION DE REMPLACER LE NAVIRE NON CONFORME PAR UN AUTRE NAVIRE REMPLISSANT LES CONDITIONS CI-DESSUS POUR EFFECTUER LA LIVRAISON CONFORMÉMENT AU CONTRAT.

D) LE VENDEUR VEILLE À CE QUE LE PORT ET/OU LE TERMINAL ET/OU L'INSTALLATION DE CHARGEMENT SE CONFORMENT AUX DISPOSITIONS DU CODE ISPS OU, SI LE PORT DE CHARGEMENT EST SITUÉ AUX ETATS-UNIS OU DANS LES TERRITOIRES AMÉRICAINS, DU MTSA.
TOUS LES FRAIS ET SURESTARIES CONCERNANT LE NAVIRE AU  PORT ET/OU AU TERMINAL ET/OU À L'INSTALLATION DE CHARGEMENT, DANS LA MESURE OÙ CES FRAIS ET SURESTARIES SONT EFFECTIVEMENT SUPPORTÉS PAR L'ACHETEUR ET RÉSULTENT DIRECTEMENT DE LA NON-CONFORMITÉ DU PORT ET/OU DU TERMINAL ET/OU DE L'INSTALLATION DE CHARGEMENT AVEC LES DISPOSITIONS DU CODE ISPS OU,  SI LE PORT DE CHARGEMENT SERONT SITUÉ AUX ETATS-UNIS OU EN TERRITOIRE AMÉRICAIN, DU MTSA, SERONT À LA CHARGE DU VENDEUR, Y COMPRIS TOUS DROITS OU TAXES SUPPLÉMENTAIRES SUR LE NAVIRE, LES SURESTARIES ET LES FRAIS ENCOURUS PAR LE NAVIRE RÉSULTANT DIRECTEMENT DES MESURES DE SÛRETÉ APPROPRIÉES, SPÉCIALES OU ADDITIONNELLES PRISES PAR LE NAVIRE CONFORMÉMENT AUX PRESCRIPTIONS DU CODE ISPS OU, LE CAS ÉCHÉANT, DU MTSA.
SAUF DANS LE CAS OÙ LE NAVIRE N'A PAS RESPECTÉ LES PRESCRIPTIONS DU CODE ISPS OU, SI LE NAVIRE SE TROUVE EN TERRITOIRE AMÉRICAIN, DU MTSA, LES SURESTARIES RÉSULTANT DIRECTEMENT DU RETARD SUBI PAR LE NAVIRE AU PORT ET/OU AU TERMINAL ET/OU À L'INSTALLATION DE CHARGEMENT À  6/12 CAUSE DES  MESURES DE CONTRÔLE, DES MESURES DE SÛRETÉ SPÉCIALES OU ADDITIONNELLES OU DES INSPECTIONS SUPPLÉMENTAIRES IMPOSÉES PAR L'OPÉRATEUR DU TERMINAL, LES AUTORITÉS PORTUAIRES OU TOUTE AUTRE AUTORITÉ COMPÉTENTE EN RAISON D'UNE DES PRÉCÉDENTES ESCALES DU NAVIRE DANS DES INSTALLATIONS PORTUAIRES, SERONT À LA CHARGE DU VENDEUR DANS LA MESURE OÙ ELLES SONT EFFECTIVEMENT SUPPORTÉES PAR L'ACHETEUR.

A L'EXCEPTION DES FRAIS ET SURESTARIES EFFECTIVEMENT SUPPORTÉS PAR L'ACHETEUR ET EXPRESSÉMENT MIS À LA CHARGE DU VENDEUR AUX TERMES DU PRÉSENT PARAGRAPHE E), L'ACHETEUR NE POURRA EN AUCUN CAS ÊTRE TENU POUR RESPONSABLE AU TITRE DE CE CONTRAT, DES FRAIS ET DOMMAGESENCOURUS PAR LE NAVIRE, L'AFFRÉTEUR OU L'ARMATEUR RÉSULTANT DU NON-RESPECT DU CODE ISPS OU, LE CAS ÉCHÉANT, DU MTSA PAR LE PORT ET/OU LE TERMINAL ET/OU L'INSTALLATION DE CHARGEMENT.'

## ARTICLE 10 – TAXES

TOUTES LES TAXES, CHARGES ET IMPOTS, APPLICABLES A LA DATE DE CONCLUSION DU PRESENT CONTRAT ET QUI PORTERONT SUR LES PRODUITS, EXIGIBLES DANS LE PAYS DU PORT DE CHARGEMENT SERONT DE LA RESPONSABILITE DU VENDEUR. TOUTES LES TAXES, CHARGES ET IMPOTS APPLICABLES A LA DATE DE CONCLUSION DU PRESENT CONTRAT ET QUI PORTERONT SUR LE FRET OU LE NAVIRE, SERONT DE LA RESPONSABILITE DE L'ACHETEUR.

## ARTICLE 11 – SURESTARIES

LE MONTANT DES SURESTARIES SERA CALCULE SELON LE TAUX ET LES TERMES DE LA CHARTE PARTIE.
SI L'ENLEVEMENT EST EFFECTUEE PAR UN NAVIRE AFFRETE A TEMPS, LES TERMES ET CONDITIONS APPLICABLES SERONT CEUX DE L'ASBATANKVOY, ET LE TAUX DE SURESTARIES SERA COMMUNIQUE AU MOMENT DE LA NOMINATION.
DANS LE CAS OU LA QUANTITE A CHARGER EST INFERIEURE AU DWT DU NAVIRE LE CALCUL SERA FAIT AU PRORATA DE LA QUANTITE CHARGEE.

## ARTICLE 12 – TRANSFERT DE PROPRIETE ET DE RISQUE

LA PROPRIETE AINSI QUE TOUS LES RISQUES ET RESPONSABILITES CONCERNANT LE PRODUIT SERONT TRANSMIS A L'ACHETEUR DES QUE LE PRODUIT AURA, AU TERMINAL DE CHARGEMENT, FRANCHIT LA BRIDE DE RACCORDEMENT ENTRE LE FLEXIBLE DE LIVRAISON ET LE SYSTEME DE CONNNEXION DU NAVIRE; LA RESPONSABILITE DU VENDEUR ETANT DEGAGEE A PARTIR DE CE POINT 7/12.

## ARTICLE 13 – FORCE MAJEURE

NI LE VENDEUR, NI L'ACHETEUR NE SERONT TENUS RESPONSABLES DE DOMMAGES D'UNE DEFAILLANCE OU D'UN RETARD ENCOURU DANS L'ACCOMPLISSEMENT DES OBLIGATIONS RESULTANT DU PRESENT CONTRAT AUTRE QUE CELLE DE PAYER, DES LORS QUE CETTE DEFAILLANCE OU CE RETARD RESULTERONT D'UN CAS DE FORCE MAJEURE, C'EST - A - DIRE TOUT EVENEMENT INSURMONTABLE POUR LA PARTIE L'INVOQUANT, NOTAMMENT MAIS SANS QUE L'ENUMERATION SUIVANTE SOIT LIMITATIVE, UNE DEFAILLANCE OU UN RETARD CAUSE PAR OU RESULTANT D'UNE CATASTROPHE NATURELLE, DE GUERRES (DECLAREES OU NON), D'INCENDIES, D'INONDATIONS, DE GREVES, D'EMEUTES, DE DESTRUCTION DE PRODUITS, DE RETARD DE TRANSPORTEURS D'ACCIDENTS, DE RESTRICTIONS IMPOSEES PAR LES AUTORITES GOUVERNEMENTALES (Y COMPRIS DE TOUTE MESURE DE REQUISITION, D'ALLOCATIONS PRIORITAIRES, TOUTE FIXATION DE QUOTAS ET TOUTE MESURE DE CONTROLE DES PRIX).
LA PARTIE QUI SERA AFFECTEE PAR LA FORCE MAJEURE DEVRA IMMEDIATEMENT EN AVISER L'AUTRE PARTIE EN INDIQUANT LA NATURE DELA CAUSE DE FORCE



7

MAJEURE ET DANS LA MESURE DU POSSIBLE, LA DUREE ESTIMEE DE L'EVENEMENT DE FORCE MAJEURE.
LE TEMPS ALLOUE AU VENDEUR POUR LIVRER LES PRODUITS ET A L'ACHETEUR POUR EN PRENDRE LIVRAISON SERA AUGMENTE A CHAQUE FOIS QUE LA LIVRAISON SERA REPOUSSEE A UNE DATE ULTERIEURE OU EMPECHEE PAR UNE CAUSE DE FORCE MAJEURE TELLE QUE DEFINIE CI DESSUS ET CE, AU MAXIMUM POUR UNE DUREE DE TRENE (30) JOURS CONSECUTIFS.
SI UNE LIVRAISON DE PRODUITS EST REPOUSSEE OU EMPECHEE PENDANT PLUS DE TRENTE (30) JOURS, CHACUNE DES PARTIES POURRA METTRE FIN A LA LIVRAISON EN QUESTION EN ADRESSANT UN PREAVIS ECRIT A L'AUTRE PARTIE.


## ARTICLE 14 – LIMITATION DE RESPONSABILITES

SOUS RESERVE DES DISPOSITIONS DU PRESENT CONTRAT, NI LE VENDEUR, NI L'ACHETEUR, NI LEURS ASSUREURS RESPECTIFS NE SERONT TENUS POUR RESPONSABLES DES PERTES/DOMMAGES INDIRECTS OU SPECIFIQUES, DE QUELQUE NATURE QU'ILS SOIENT, QUI RESULTERAIENT DE L'EXECUTION OU DE LA NON EXECUTION DU PRESENT CONTRAT.


## ARTICLE 15 – GARANTIES

LA QUALITE DU PRODUIT LIVRE SERA LA QUALITE INDIQUEE AU PARAGRAPHE 5 QUALITE.


## ARTICLE 16 – CESSION DU CONTRAT

8/12
NI LE VENDEUR , NI L'ACHETEUR NE POURRONT TRANSFÉRER TOUT OU PARTIE DE LEURS DROITS ET OBLIGATIONS RELATIFS AU CONTRAT COMMERCIAL À UNE AUTRE SOCIÉTÉ, SANS AVOIR OBTENU, AU PRÉALABLE, L'ACCORD ÉCRIT DE L'AUTRE PARTIE.EN CAS D'ACCORD, LA PARTIE CEDANTE RESTERA SOLIDAIREMENT RESPONSABLE ET GARANTIRA LA BONNE EXECUTION DU PRESENT CONTRAT PAR LE CESSIONNAIRE.
TOUTEFOIS L'ACHETEUR RESTE LIBRE DE TRANSFÉRER SES DROITS ET OBLIGATIONS RELATIFS AU CONTRAT COMMERCIAL À UNE SOCIÉTÉ AFFILIÉE.


## ARTICLE 17 – LOI APPLICABLE

LE PRESENT CONTRAT (ET L'OFFRE DU VENDEUR) EST CONCLU ET SERA REGI ET INTERPRETE A TOUS LES EGARDS SELON LES LOIS FRANCAISES, A L'EXCLUSION DE TOUT AUTRE SYSTEME DE DROIT.
EN OUTRE, LES PARTIES SONT D'ACCORD DES A PRESENT POUR QUE L'APPLICATION DES DISPOSITIONS DE « L'UNITED NATIONS CONVENTION ON CONTRACTS FOR THE INTERNATIONAL SALE OF GOODS 1980 » SOIT EXCLUE DE CE CONTRAT AINSI QUE LE PREVOIT L'ARTICLE 6 DE CETTE CONVENTION.

LES PARTIES SONT EXPRESSEMENT CONVENUES QUE TOUS DIFFERENDS OU AFFAIRES CONTENTIEUSES DECOULANT DE CE CONTRAT, RELATIFS A CE CONTRAT OU NES DE LA RUPTURE DE CE CONTRAT SERONT SOUMIS A LA JURIDICTION EXCLUSIVE DE LA HAUTE COUR SIEGEANT A PARIS, L'ACTION JUDICIAIRE ETANT INTRODUITE PAR LETTRE RECOMMANDEE.

TOUTEFOIS, TOUTE DECISION DE LA HAUTE COUR POURRA ETRE MISE A EXECUTION DANS LE RESSORT DES TRIBUNAUX DE TOUT PAYS ET, DE PLUS, AUCUNE PARTIE NE POURRA ETRE EMPECHEE D'EXECUTER UNE SAISIE-ARRET ET/OU TOUTE ACTION CONSERVATOIRE DANS LE RESSORT DES TRIBUNAUX DE TOUT AUTRE PAYS, OU D'EXERCER TOUT DROIT CONTRACTUEL PREVU DANS CE CONTRAT EN RAPPORT AVEC LE NAVIRE OU LE PRODUIT.


## ARTICLE 18 – AUTRES TERMES ET CONDITIONS

LES PARTIES SE REFERERONT AUX INCOTERMS ETABLIS PAR LA CHAMBRE DE COMMERCE INTERNATIONALE POUR LES VENTES RENDUES FOB (EDITION 2000). DANS LA MESURE OU ELLES NE SERONT PAS EN CONTRADICTION AVEC LES TERMES DU PRESENT CONTRAT.


## ARTICLE 19 – NOTIFICATION

TOUTE NOTIFICATION RELATIVE A L'EXECUTION DU PRESENT CONTRAT SERA FAITE PAR LETTRE RECOMMANDEE OU LETTRE ORDINAIRE OU PAR TELEFAX  AUX ADRESSES SUIVANTES :


## ARTICLE 20 – DROIT ET ARBITRAGE

20.1   LE CONTRAT DE COMMERCIALISATION EST REGI PAR LA LOI IVOIRIENNE A L'EXCLUSION DES DISPOSITIONS DE LA CONVENTION DE VIENNE (CONVENTION DES NATIONS UNIES SUR LES CONTRATS DE VENTE INTERNATIONALE DE MARCHANDISES DU 11 AVRIL 1980).

20.2   TOUT DIFFEREND DECOULANT DU PRESENT CONTRAT OU DU CONTRAT DE PREPAIEMENT OU EN RELATION AVEC CEUX-CI SERA DEFINITIVEMENT RESOLU SUIVANT LE REGLEMENT D'ARBITRAGE DE LA CHAMBRE DE COMMERCE INTERNATIONALE EN VIGUEUR A LA DATE D'INTRODUCTION DE LA PROCEDURE D'ARBITRAGE PAR LA PARTIE LA PLUS DILIGENTE, LEQUEL REGLEMENT EST REPUTE ETRE INTEGRE PAR RENVOI DANS LA PRESENTE CLAUSE. LE TRIBUNAL ARBITRAL SERA COMPOSE DE TROIS ARBITRES QUI SERONT, A DEFAUT D'ACCORD ENTRE LES PARTIES, NOMMES PAR LA CHAMBRE DE COMMERCE INTERNATIONALE (CCI). LE LIEU DE L'ARBITRAGE SERA GENEVE (SUISSE) ET LA LANGUE SERA LE FRANÇAIS. LE DROIT APPLICABLE EST LE DROIT IVOIRIEN.

LA PRESENTE CLAUSE EST SANS PREJUDICE DU DROIT DE L'ACHETEUR DE SAISIR TOUTE JURIDICTION COMPETENTE POUR TOUTE MESURE CONSERVATOIRE, PROVISIONNELLE, D'URGENCE, D'INSTRUCTION OU D'EXECUTION.

LES PARTIES   RENONCENT IRREVOCABLEMENT A SE PREVALOIR DE TOUTE IMMUNITE DE JURIDICTION OU D'EXECUTION DONT ELLES POURRAIENT BENEFICIER, QU'UNE EXCEPTION D'IMMUNITE SOIT OU NON INVOQUEE. ELLES RENONCENT EN PARTICULIER IRREVOCABLEMENT A L'IMMUNITE CONCERNANT LA SIGNIFICATION DES ACTES JUDICIAIRES OU EXTRAJUDICIAIRES, A L'IMMUNITE DE JURIDICTION DEVANT UNE COUR OU UN TRIBUNAL ET A L'IMMUNITE D'EXECUTION PORTANT SUR UN ELEMENT DE LEUR PATRIMOINE LORS D'UNE SAISIE OU D'UNE AUTRE VOIE D'EXECUTION. ELLES CONSENTENT, PAR AILLEURS, IRREVOCABLEMENT ET DE LA FAÇON LA PLUS GENERALE, A ACCEPTER TOUTE DECISION, JUDICIAIRE OU ARBITRALE, EXECUTOIRE, QUI SERAIT JUGEE ET TOUTE MESURE D'EXECUTION QUI SERAIT PRISE DANS LE CADRE D'UN TEL DIFFEREND, NOTAMMENT TOUTE ORDONNANCE OU DECISION JUDICIAIRE QUI POURRAIT ETRE RENDUE A L'ENCONTRE DE SES BIENS OU DE SES REVENUS (QUELLE QUE SOIT L'UTILISATION EFFECTIVE OU PROJETEE DE CES BIENS OU REVENUS) ET QUE CETTE ORDONNANCE OU DECISION SOIT OU NON RENDUE DANS LE CADRE D'UNE EXECUTION FORCEE A SON ENCONTRE.

20.3   SI LES PARTIES ONT A S'ACCORDER SUR UN PARAMETRE DU PRESENT CONTRAT, PAR REFERENCE AUX USAGES NOTAMMENT, ET QU'ELLES NE TROUVENT PAS UN ACCORD, LE PARAMETRE EN CAUSE SERA FIXE PAR UN EXPERT DESIGNE DE COMMUN ACCORD DES PARTIES OU A DEFAUT, PAR LA CHAMBRE D'ARBITRAGE DE LA CCI GENEVE. L'EXPERT NE SERA PAS UN ARBITRE. SA DECISION SUR LA FIXATION DU PARAMETRE EN CAUSE S'IMPOSERA AUX PARTIES SANS FACULTE D'APPEL. LES FRAIS SERONT ALORS SUPPORTES A PARTS EGALES PAR LES DEUX PARTIES.

## ARTICLE 21 – CONFIDENTIALITE

CHACUNE DES PARTIES S'ENGAGE EXPRESSEMENT A CONSERVER UN CARACTERE CONFIDENTIEL AU PRESENT CONTRAT DE COMMERCIALISATION ET AUX INFORMATIONS ET DOCUMENTS QUI ONT ETE OU SERONT PORTES A SA CONNAISSANCE A L'OCCASION DE LA NEGOCIATION OU DE L'EXECUTION DUDIT CONTRAT ET S'INTERDIT EN CONSEQUENCE DE TRANSMETTRE A DES TIERS L'UN QUELCONQUE DESDITS DOCUMENTS, ET EN PARTICULIER CE CONTRAT, OU TOUTE INFORMATION S'Y RAPPORTANT SANS AVOIR OBTENU AU PREALABLE L'ACCORD ECRIT DE L'AUTRE PARTIE.

L'ACHETEUR EST TOUTEFOIS AUTORISE A COMMUNIQUER LE CONTRAT DE COMMERCIALISATION A LA BANQUE DE FINANCEMENT FINANÇANT LE PREPAIEMENT.

LA PRESENTE CLAUSE N'EST PAS APPLICABLE A LA DIVULGATION  RENDUE NECESSAIRE PAR L'EXECUTION FORCEE (DECISION JUDICIAIRE, ARBITRALE OU ADMINISTRATIVE), OU A LA DIVULGATION A DES CONSULTANTS OU CONSEILS JURIDIQUES EXTERNES RETENUS PAR LES PARTIES DANS LE BUT D'ANALYSER LE PRESENT CONTRAT DE COMMERCIALISATION, LES INFORMATIONS ET DOCUMENTS Y AFFERENTS. CES CONSULTANTS OU CONSEILS JURIDIQUES EXTERNES RETENUS,

10

PAR LES PARTIES DOIVENT ETRE SOUMIS AUX MEMES CONDITIONS DE CONFIDENTIALITE QUE LES PARTIES.

## ARTICLE 22 – TRANSFERT DU CONTRAT

AUCUNE DES DEUX PARTIES NE POURRA TRANSFERER OU CEDER A UN TIERS LES DROITS ET OBLIGATIONS RELATIFS AU PRESENT CONTRAT SANS L'ACCORD PREALABLE DONNE PAR ECRIT PAR L'AUTRE PARTIE. TOUTEFOIS L'ACHETEUR AURA LE DROIT DE CEDER, DONNER EN GARANTIE OU CONTRACTER TOUTE SURETE SUR SES DROITS A PRENDRE LIVRAISON OU AUTRE DROIT ISSU DU CONTRAT DE COMMERCIALISATION, A TOUT SOUS-ACQUEREUR DES PRODUITS PETROLIERS OU A TOUT CREANCIER INTERVENU DANS LE FINANCEMENT DU PRIX OU DU PREPAIEMENT, SOUS RESERVE D'EN INFORMER LE VENDEUR AU PREALABLE. LE VENDEUR ACCEPTE D'ORES ET DEJA LA CESSION PAR L'ACHETEUR DE SES DROITS A PRENDRE LIVRAISON DES PRODUITS PETROLIERS AU TITRE DU PRESENT CONTRAT EN FAVEUR DE LA BANQUE DE FINANCEMENT DU PREPAIEMENT, AUX TERMES D'UNE CESSION DE CREANCES PROFESSIONNELLES SIGNEE OU DEVANT ETRE SIGNEE ENTRE L'ACHETEUR ET LA BANQUE DE FINANCEMENT.

## FAIT A ABIDJAN LE 11 SEPTEMBRE 2012

Pour LA CHORALE

LA CHORALE
RIVIERA LES JARDINS
BP 178 CIDEX 03 ABIDJAN
COTE D'IVOIRE
TEL : 225 22 43 81 05
FAX : 225 22 43 84 63

La Chorale
Tél: +225 22 43 81 05
Fax: +225 22 43 84 63
B.P: Cidex 03 Abidjan
www.lachoraleci.com

Pour ARK EXPLORATION AND PRODUCTION HOLDINGS LTD

**ARK EXPLORATION AND PRODUCTION HOLDINGS LTD**
OMAR HODGE BUILDING, 325 WATERFRONT DRIVE, 2ND FLOOR, WICKHAM'S CAY 1, ROAD TOWN TORTOLA, BRITISH VIRGIN ISLANDS

11

# DEBT SETTLEMENT AGREEMENT

**BETWEEN**

**LA CHORALE SARL**

**AND**

**ARK EXPLORATION AND PRODUCTION HOLDINGS LTD**

**THIS AGREEMENT** is made on 20th Day of OCTOBER, 2012.

<b>BETWEEN</b>

LA CHORALE SARL (hereinafter referred to as "PARTY A"), of RIVIERA LES JARDINS, ILOT B, VILLA 415, COCODY, BP 178 CIDEX 03, ABIDJAN – COTE D'IVOIRE (which expression shall include his successors-in-interest and permitted assigns) of the first part;

<b>AND</b>

ARK EXPLORATION AND PRODUCTION HOLDINGS LTD, (hereinafter referred to as "PARTY B"), of OMAR HODGE BUILDING, 325 WATERFRONT DRIVE, 2ND FLOOR, WICKHAM'S CAY 1, ROAD TOWN, TORTOLA, BRITISH VIRGIN ISLANDS, (which expression shall include his successors-in-interest and permitted assigns) of the second part.

**RECITALS**

WHEREAS:-

    (a) PARTY A – is an Oil and Gas Trading Company which supplies Petroleum Products – among others;

    (b) PARTY B – is an Oil and Gas Exploration, Production Company which supplies Petroleum Products – among others.

NOW IT IS AGREED as follows:

**1    Introduction**

    <u>Purpose</u>: The parties herein, relish their complimentary capabilities as per a non-payment of Invoice (N001-201209/ADY/HN), for a Sales and Purchase Agreement to Supply Jet A1 cum Gasoline, and are desirous of collaborating with each other for both PARTIES to find a solution.

**2    Transaction:** PARTY B Purchased Fuel Products: (All Prices in United States Dollars).as follows:-

        i.    A1   (20,000 MT +/-5%) at Unit Price $1,006.75 = $20,149,929.09 

BL Date 19/09/2012

    ii.    Gasoline  (60,000 MT+/-5%) at Unit Price $1,049.65 = $62,986,322.32
BL Date 20/09/2012

**3.**    **Total Amount Due (Debt) = $83,136,251.41**

    iii.    Payment Terms:- At Sight

    iv.    Mode of Payment:- Firm and Irrevocable Offer

    v.    Due Date:- 29/09/2012

**4.**    **Terms:-**

The parties agree that the **Total Amount Due (hereinafter referred to as "the Debt") = $83,136,251.41**, is a debt owed by Party A to Party B as per the Transaction above:-

(a) Interest shall accrue on the unpaid balance of the debt at the rate of 8.4 percent per annum, compounded monthly. Accrued interest shall be added to the unpaid balance.

(b) PARTY B shall make payments to PARTY A on the 28th day of each month. Each payment shall be no less than $8,313,625.14.

(c) If a payment is late, a penalty of $40.00 per $1,000.00 shall be added to the unpaid balance of the debt.

(d) If a cheque tendered by Borrower is returned or declined a charge of $40.00 per $1,000.00 shall be added to the unpaid balance of the debt, and all future payments shall be accepted only in guaranteed funds (cash, bankers draft, money order, certified cheque etc).

(e) The entire balance due shall be paid in full no later than twelve months after date of commencement or signatures – whichever is the latter.

(f) If the entire balance due is not paid in full as per CLAUSE 4 above, or if PARTY B fails to make a payment for more than 30 days after its due date, then PARTY A shall be entitled to demand the entire balance due immediately and take all legal actions necessary to collect the debt.

(g) Any and all costs of collecting the debt shall be added to the amount owed by PARTY B.

(h) If the debt goes to collection the interest rate shall increase to 10.00 percent per annum, compounded monthly and shall be added to the balance due on the 28th day of each month until the entire debt is paid in full.

(i) All other Expenses shall be borne by each party unless agreed to in writing via email or text prior to any disbursement thereof.

**5.      Immediate termination for breach**

Any party may terminate this agreement by notice (see clause 10 below) in writing with immediate effect if any party is in material breach of any of the terms of this agreement and such breach remains unremedied 14 days after receipt of notice from the terminating party that the other party is in breach.

**6.      Immediate termination for credit reasons**

Either party shall have the right to terminate this agreement with immediate effect on notice in writing if liquidation or similar proceedings are filed by or against the other party or if any action is taken by or against the other party under any law the purpose or effect of which is or may be to relieve such party in any manner from its debts or to extend the time of payment thereof or the other party makes an assignment for the benefit of creditors or makes any conveyance of any of its property which in the opinion of the terminating party may be to the detriment of that party's creditors or if a receiver or trustee or similar official is appointed with authority to take possession of the other party's property or any part thereof.

**7.      Confidentiality**

**7.1**    Confidentiality: Each party undertakes that for a period of 5 years from the date of disclosure it will treat the other party's information marked 'confidential' or which from its very nature is obviously confidential (including all material relating to or constituting "Exclusive" Intellectual Property) with the same degree of care as it employs with regard to its own confidential information of a like nature and in any event in accordance with best current commercial security practices.

**7.2**    No intentional disclosure: Neither party will intentionally disclose the other's confidential information to third parties other than those of its employees, consultants and sub-contractors who need to have such information for the purposes of this Agreement, and shall ensure that such recipients shall be bound by the same confidentiality obligations as are set out in this clause.

**7.3**    Exclusions: This undertaking does not extend to information which was already known to one party prior to disclosure by the other, which is or becomes public knowledge, or which is disclosed by one party to a third party without any obligations of confidentiality.

**8**      **Force majeure**

Neither party shall have any liability under or be deemed to be in breach of this Agreement for any delays or failures in performance of this Agreement which result from circumstances beyond the reasonable control of that party. If such circumstances continue for a continuous period of more than 6 months, either party may terminate this Agreement by written notice to the other party.(or)Notwithstanding anything else contained in this Agreement, neither party shall be liable for any delay in performing its obligations under this Agreement if such delay is caused by circumstances beyond its reasonable control (including without limitation any delay caused by any act or omission of the other party) provided however that any delay by a sub-contractor or supplier of the party so delaying shall not relieve the party from liability for delay except where such delay is beyond the reasonable control of the sub-contractor or supplier concerned. Subject to the party so delaying promptly notifying the other party in writing of the reasons for the delay (and the likely duration of the delay), the performance of such party's obligations shall be suspended during the period that the said circumstances persist and such party shall be granted an extension of time for performance equal to the period of the delay. Save where such delay is caused by the act or omission of the other party (in which event the rights, remedies and liabilities of the parties shall be those conferred and imposed by the other terms of this Agreement and by law):

**8.1**     Any costs arising from such delay shall be borne by the party incurring the same;

**8.2**     Either party may, if such delay continues for more than 10 weeks, terminate this Agreement forthwith giving notice in writing to the other by reason of such termination.

**9**      **Miscellaneous**

**9.1**     **Assignment**

**9.1.1**   This Agreement is personal to the parties.  Neither this Agreement nor any rights, licences or obligations under it, may be assigned by any party without the prior written approval of the other parties.

**9.1.2**   Notwithstanding the foregoing, any party may assign this Agreement to any acquirer of all or of substantially all of such party's equity securities, assets or business relating to the subject matter of this Agreement or to any entity controlled by, that controls, or is under common control with a party to this Agreement. Any attempted assignment in violation of this clause will be void

and without effect.

**9.2    Entire agreement**

This document embodies the entire understanding and agreement between the parties in connection with the subject matter of this Memorandum and neither party is relying on any representations, promises, terms, conditions or obligations oral or written express or implied other than those contained in this Agreement. Neither party seeks to exclude liability for fraudulent or grossly negligent misrepresentation.

**9.3    Waiver**

No delay, neglect or forbearance on the part of either party in enforcing against the other party any term or condition of this Agreement shall either be or be deemed to be a waiver or in any way prejudice any right of that party under this Agreement. No right, power or remedy in this Agreement conferred upon or reserved for either party is exclusive of any other right, power or remedy available to that party.

**9.4    Amendment**

This Agreement may not be released, discharged, supplemented, interpreted, amended, varied or modified in any manner except by an instrument in writing signed by a duly authorised officer or representative of each of the parties.

**9.5    Headings**

The clause headings in this Memorandum are for reference purposes only and are not intended to be taken into account when interpreting the clauses.

**10    Notices**

**10.1**    All notices under this Agreement shall be in writing.

**10.2**    Notices shall be deemed to have been duly given:-

**10.2.1** When delivered, if delivered by courier or other messenger (including registered mail) during normal business hours of the recipient; or

**10.2.2** When sent, if transmitted by fax or e-mail and a successful transmission report or return receipt is generated; or

**10.2.3** On the fifth business day following mailing, if mailed by national

ordinary mail, postage prepaid; or

**10.2.4** On the tenth business day following mailing, if mailed by airmail, postage prepaid; in each case addressed to the most recent address, e-mail address, or facsimile number notified to the other party.

## 11    Proper law and jurisdiction

**11.1**    This Agreement and all matters arising from it and any dispute resolutions referred to below shall be governed by and construed in accordance with the Laws of the UNITED KINGDOM notwithstanding the conflict of law provisions and other mandatory legal provisions.

**11.2**    Each party recognises that the other party's business relies upon the production of its intellectual property rights and other proprietary information and trade secrets ('IPR') and that in the event of a breach or threatened breach of IPR, the other party will be caused irreparable damage and such other party may therefore be entitled to injunctive or other equitable relief in order to prevent a breach or threatened breach of its IPR.

## 12    Arbitration

**12.1**    If the parties cannot resolve a dispute in accordance with the procedure in clauses above, then they shall with the assistance of the LONDON Court of International Arbitration (LCIA), seek to resolve the dispute or difference amicably by using an Alternative Dispute Resolution ('ADR') procedure acceptable to both parties before pursuing any other remedies available to them. If either party fails or refuses to agree to or participate in the ADR procedure or if in any event the dispute or difference is not resolved to the satisfaction of both parties within 90 days after it has arisen, the matter shall be settled in accordance with the procedure below.

**12.2**    If the parties cannot resolve the dispute by the procedure set out above, the parties shall irrevocably submit to the exclusive jurisdiction of the English courts for the purposes of hearing and determining any dispute arising out of this Agreement (or) any dispute which may arise between the parties concerning this Agreement shall be determined as follows:-

**12.3**    If the dispute shall be of a technical nature relating to the functions or capabilities of any software or programs (whether licensed or not) or any similar or related matter then such a dispute shall be referred for

final settlement to an expert nominated jointly by the parties or failing such nomination within 14 days after either party's request to the other therefore nominated at the request of either party by the President for the time being of the LONDON Court of International Arbitration. Such expert shall be deemed to act as an expert and not as an arbitrator. His decision shall (in the absence of clerical or manifest error) be final and binding on the parties and his costs shall be borne between the parties in equal shares unless he determines that the conduct of either party is such that such party should bear all of such fees.

**12.4** In any other case the dispute shall be determined by the High Court of Justice in the United Kingdom and the parties submit to the exclusive jurisdiction of that Court for such purposes.

SIGNED AND SEALED for and on behalf of PARTY A

by _____Hervé  NOOBA_____

Tél: +225 22 43 81 05
Fax: +225 22 43 84 63
B.P: Cidex 03 Abidjan
www.lachoraleci.com

SIGNED AND SEALED for and on behalf of PARTY B

by_____Kolawole  Akanni  Alulco_____

THE ABOVE SIGNATURES CONFIRM THAT THE PARTIES HAVE READ AND APPROVE EACH AND ALL OF THE TERMS AND CONDITIONS" SET

**GUARANTY AND INDEMNITY**

GUARANTY (this "Guaranty") dated June 28th, 2015 of Earnshaw Associates Limited, a company incorporated in The British Virgin Islands ("Guarantor") for the benefit of La Chorale Sarl, an Ivory Coast incorporated company ("Creditor").

WHEREAS, Creditor and Ark Exploration and Production Holdings Ltd a company incorporated in the British Virgin Islands ("Obligor"), entered into a Settlement Agreement dated as of October 20th, 2012 (the "Settlement Agreement"); and

WHEREAS, in order to induce Creditor to delay enforcement efforts under the Settlement Agreement, Guarantors have agreed to guarantee all obligations of the Obligor under the Settlement Agreement.

NOW THEREFORE, in consideration of the foregoing, the mutual covenants and agreements contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound hereby, Guarantors agree as follows:

1.    Defined Terms.  Capitalized terms used but not defined herein shall have the meanings ascribed thereto in the Settlement Agreement.

2.    Guarantee.  Guarantor hereby unconditionally and irrevocably guarantees the performance of the Settlement Agreement by Obligor.  Accordingly, in the event Obligor does not fully perform its obligations under the Settlement Agreement on the Delivery Date or at any time thereafter at Creditor's sole and absolute discretion and Creditor's recourse to and exercise of its rights is not sufficient, Guarantor shall step into the shoes of Obligor and deliver or cause to be delivered the amounts due under the Settlement Agreement and/or agree to the entry of a Confession of Judgement when demanded in writing or orally.

3.    No presentment, etc.  Guarantor hereby waives presentment, demand of payment, filing of claims, any right to require Creditor to proceed first against Obligor, protest, notice and all demands whatsoever and agrees that this Guaranty shall not be discharged except by complete performance of all obligations contained in this Guaranty.  The responsibility of Guarantor shall not be affected by any settlement, extension, modification or variation of the terms of the Settlement Agreement, or by the discharge or release of the obligations of Obligor, or any other person, by operation of law or otherwise.

4.    Joint and Several Liability. Guarantors hereby assume joint and several liability on the full amounts of the debts due to Creditor in the Settlement Agreement with Obligor

5.    Nature and preservation of liability

5.1 Absolute liability

(a) The liability of the Guarantor under this deed is absolute and is not subject to the performance of any condition precedent or subsequent, including any condition between the Guarantor and the Obligor.

(b) This deed binds each entity who has executed it, despite:

    (i) any entity, whether named as a party or not, not executing this deed or any Document;

    (ii) the execution of this deed or any Document by any person is invalid, forged or irregular in any way; or

    (iii) this deed or any Document is or becomes unenforceable, void or voidable against any other person.

## 5.2 Unconditional liability

Unless otherwise provided for in this deed, the liability of Guarantors will not be affected by an act, omission, matter or thing which, but for this clause 5.2, might operate in law or in equity to release the Guarantor from that liability or to reduce the Guarantor's liability under this deed including, any of the following:

(a) **(Event of Insolvency):** the occurrence before, on or at any time after the date of this deed, of any Event of Insolvency in relation to any Obligor;

(b) **(Distribution):** the receipt by Creditor of any payment, dividend or distribution under any Insolvency Provision in relation to any Obligor (other than payment in full of the Obligations);

(c) **(Event of Default):** the occurrence of any Event of Default;

(d) **(Invalidity etc):** any payment or other act, the making or doing of which would otherwise form part of the Obligations being or becoming or being conceded to be frustrated, illegal, invalid, void, voidable, unenforceable or irrecoverable in whole or in part for any reason whether past, present or future;

(e) **(Further Security):** any party accepting or declining to accept any Security from any person at any time;

(f) **(Time or indulgence):** any party granting time, waiver or other indulgence or concession to, or making any composition or compromise with, the Obligor;

(g) **(Forbearance):** Creditor not exercising or delaying (whether deliberately, negligently,

unreasonably or otherwise) in the exercise of any Power it has for the enforcement of any Document or any Obligation;

(h) **(Acquiescence or other omission):** any laches, acquiescence or other act, neglect, default, omission or mistake by any Party;

(i) **(Repudiation):** the determination, rescission, repudiation or termination, or the acceptance of any of the foregoing, by any Party or the Obligor of any Document or any Obligation;

(j) **(Variation):** any variation to any Document or any Obligation, whether or not that variation is substantial or material, or imposes any additional liability on or disadvantages the Obligor;

(k) **(Release):** the full, partial or conditional release or discharge by the Parties or by operation of law, of any Obligor from any Document or any Obligation;

(l) **(Security property):** the release of any property from any Security or the substitution of any property in place of any other property the subject of a Security;

(m) **(Security):** the releasing, wasting, destroying, abandoning, prejudicing or not perfecting, maintaining, preserving, enforcing or realising or not properly enforcing or realising any Security;

(n) **(Loss of Security):** the failure to obtain any Security or the loss or impairment of any Security by operation of law or otherwise, whether or not the same is in breach of any express or implied condition to obtain or preserve that Security, or is in breach of any equitable duty which might otherwise have been imposed on the Security Trustee;

(o) **(Priority of Securities):** Creditor agreeing to the postponement or loss of any priority attaching to any Security;

(p) **(Accounts):** the opening or operation of any new account by the Obligor;

(q) **(Change of constitution):** any change in membership (whether by death or retirement of an existing member, admission of a new member, or otherwise) or in the name of any partnership, firm or association in which the Obligor is a member;

(r) **(Transfer):** the transfer, assignment or novation by Creditor or the Obligor of all or any of its rights or obligations under any Document or any Obligation;

(s) **(Disclosure):** any failure by Creditor to disclose to the Guarantor any material or unusual fact, circumstance, event or thing known to, or which ought to have been known by, the parties relating to or affecting the Obligor at any time before or during the currency of this deed, whether prejudicial or not to the rights and liabilities of the

Guarantor and whether or not Creditor under any duty to disclose that fact, circumstance, event or thing to the Guarantor or to the Obligor;

(t) **(Covenant not to take action):** Creditor agreeing with the Obligor not to sue, issue process, sign or execute judgment, commence proceedings for bankruptcy or liquidation, participate in any administration, scheme or deed of arrangement or reconstruction, prove in any bankruptcy or liquidation, or do anything else in respect of the liability of the Obligor; or

**5.3** Waiver of defences

The Guarantor waives any defence arising by reason of any disability or other defence or the cessation from any cause whatsoever of the liability of any Debtor (other than payment in full of the Obligations), or any claim that that Guarantor's obligations exceed or are more burdensome than those of any Debtor and waives the benefit of any statute of limitations affecting the liability of that Guarantor under this deed.

6.      Governing Law.  This Guaranty shall be governed by, and construed in accordance with, the laws of the State of New York without giving effect to the principles of conflicts of laws thereof.

IN WITNESS WHEREOF, Guarantor has duly executed this Guaranty as of this 28th day of June 2015.

Johnnie Quaicoe
Sole Director
Earnshaw Associated Limited

# GUARANTY AND INDEMNITY

GUARANTY (this "Guaranty") dated June 28th, 2015 of One 57 79 Inc, a company incorporated in New York  ("Guarantor") for the benefit of NH Consulting & Engineering Sarl, an Ivory Coast incorporated company ("Creditor").

WHEREAS, La Chorale and Ark Exploration and Production Holdings Ltd a company incorporated in the British Virgin Islands  ("Obligor"), entered into a Settlement Agreement dated as of October 20th, 2012 (the "Settlement Agreement"); and

WHEREAS, La Chorale has assigned its rights to NH Consulting & Engineering Sarl ("Creditor"); and

WHEREAS, in order to induce Creditor to delay enforcement efforts under the Settlement Agreement, Guarantors have agreed to guarantee all obligations of the Obligor under the Settlement Agreement.

NOW THEREFORE, in consideration of the foregoing, the mutual covenants and agreements contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound hereby, Guarantors agree as follows:

1.    <u>Defined Terms</u>.  Capitalized terms used but not defined herein shall have the meanings ascribed thereto in the Settlement Agreement.

2.    <u>Guarantee</u>.  Guarantor hereby unconditionally and irrevocably guarantees the performance of the Settlement Agreement by Obligor.  Accordingly, in the event Obligor does not fully perform its obligations under the Settlement Agreement on the Delivery Date or at any time thereafter at Creditor's sole and absolute discretion and Creditor's recourse to and exercise of its rights is not sufficient, Guarantor shall step into the shoes of Obligor and deliver or cause to be delivered the amounts due under the Settlement Agreement and/or agree to the entry of a Confession of Judgement when demanded in writing or orally.

3.    <u>No presentment, etc</u>.  Guarantor hereby waives presentment, demand of payment, filing of claims, any right to require Creditor to proceed first against Obligor, protest, notice and all demands whatsoever and agrees that this Guaranty shall not be discharged except by complete performance of all obligations contained in this Guaranty.  The responsibility of Guarantor shall not be affected by any settlement, extension, modification or variation of the terms of the Settlement Agreement, or by the discharge or release of the obligations of Obligor, or any other person, by operation of law or otherwise.

4.    <u>Joint and Several Liability.</u> Guarantors hereby assume joint and several liability on the full amounts of the debts due to Creditor in the Settlement Agreement with Obligor

5.    <u>Nature and preservation of liability</u>

5.1 Absolute liability

    (a)  The liability of the Guarantor under this deed is absolute and is not subject to the performance of any condition precedent or subsequent, including any condition between the Guarantor and the Obligor.

    (b)  This deed binds each entity who has executed it, despite:

        (i)  any entity, whether named as a party or not, not executing this deed or any Document;

        (ii)  the execution of this deed or any Document by any person is invalid, forged or irregular in any way; or

        (iii)  this deed or any Document is or becomes unenforceable, void or voidable against any other person.

5.2 Unconditional liability

Unless otherwise provided for in this deed, the liability of Guarantors will not be affected by an act, omission, matter or thing which, but for this clause 5.2, might operate in law or in equity to release the Guarantor from that liability or to reduce the Guarantor's liability under this deed including, any of the following:

    (a)  **(Event of Insolvency):** the occurrence before, on or at any time after the date of this deed, of any Event of Insolvency in relation to any Obligor;

    (b)  **(Distribution):** the receipt by Creditor of any payment, dividend or distribution under any Insolvency Provision in relation to any Obligor (other than payment in full of the Obligations);

    (c)  **(Event of Default):** the occurrence of any Event of Default;

    (d)  **(Invalidity etc):** any payment or other act, the making or doing of which would otherwise form part of the Obligations being or becoming or being conceded to be frustrated, illegal, invalid, void, voidable, unenforceable or irrecoverable in whole or in part for any reason whether past, present or future;

    (e)  **(Further Security):** any party accepting or declining to accept any Security from any person at any time;

    (f)  **(Time or indulgence):** any party granting time, waiver or other indulgence or

concession to, or making any composition or compromise with, the Obligor;

(g) **(Forbearance):** Creditor not exercising or delaying (whether deliberately, negligently, unreasonably or otherwise) in the exercise of any Power it has for the enforcement of any Document or any Obligation;

(h) **(Acquiescence or other omission):** any laches, acquiescence or other act, neglect, default, omission or mistake by any Party;

(i) **(Repudiation):** the determination, rescission, repudiation or termination, or the acceptance of any of the foregoing, by any Party or the Obligor of any Document or any Obligation;

(j) **(Variation):** any variation to any Document or any Obligation, whether or not that variation is substantial or material, or imposes any additional liability on or disadvantages the Obligor;

(k) **(Release):** the full, partial or conditional release or discharge by the Parties or by operation of law, of any Obligor from any Document or any Obligation;

(l) **(Security property):** the release of any property from any Security or the substitution of any property in place of any other property the subject of a Security;

(m) **(Security):** the releasing, wasting, destroying, abandoning, prejudicing or not perfecting, maintaining, preserving, enforcing or realising or not properly enforcing or realising any Security;

(n) **(Loss of Security):** the failure to obtain any Security or the loss or impairment of any Security by operation of law or otherwise, whether or not the same is in breach of any express or implied condition to obtain or preserve that Security, or is in breach of any equitable duty which might otherwise have been imposed on the Security Trustee;

(o) **(Priority of Securities):** Creditor agreeing to the postponement or loss of any priority attaching to any Security;

(p) **(Accounts):** the opening or operation of any new account by the Obligor;

(q) **(Change of constitution):** any change in membership (whether by death or retirement of an existing member, admission of a new member, or otherwise) or in the name of any partnership, firm or association in which the Obligor is a member;

(r) **(Transfer):** the transfer, assignment or novation by Creditor or the Obligor of all or any of its rights or obligations under any Document or any Obligation;

(s) **(Disclosure):** any failure by Creditor to disclose to the Guarantor any material or

unusual fact, circumstance, event or thing known to, or which ought to have been known by, the parties relating to or affecting the Obligor at any time before or during the currency of this deed, whether prejudicial or not to the rights and liabilities of the Guarantor and whether or not Creditor under any duty to disclose that fact, circumstance, event or thing to the Guarantor or to the Obligor;

(t)     **(Covenant not to take action):** Creditor agreeing with the Obligor not to sue, issue process, sign or execute judgment, commence proceedings for bankruptcy or liquidation, participate in any administration, scheme or deed of arrangement or reconstruction, prove in any bankruptcy or liquidation, or do anything else in respect of the liability of the Obligor; or

**5.3** Waiver of defences

The Guarantor waives any defence arising by reason of any disability or other defence or the cessation from any cause whatsoever of the liability of any Debtor (other than payment in full of the Obligations), or any claim that that Guarantor's obligations exceed or are more burdensome than those of any Debtor and waives the benefit of any statute of limitations affecting the liability of that Guarantor under this deed.

6.     Governing Law.  This Guaranty shall be governed by, and construed in accordance with, the laws of the State of New York without giving effect to the principles of conflicts of laws thereof.

IN WITNESS WHEREOF, Guarantor has duly executed this Guaranty as of this 9th day of June 2017.

_____

Johnnie Quaicoe
Authorized Representative
One57 79 Inc

## ASSIGNMENT OF GUARANTY AND INDEMNITY

1.    Assignment of Guaranty and Indemnity agreement.  Pursuant to that certain Guaranty and Indemnity Agreement (the "Guaranty Agreement") dated as of June 28th, 2015 by and between La Choral Sarl ("Assignor") and Earnshaw Associates Limited, a British Virgin Islands corporation, Assignor hereby transfers, assigns, conveys, and delivers to NH Consulting & Engineering Sarl ("Assignee") all of Assignor's right, title, and interest in and to the Security owned by Assignor (the "Security").

2.    Defined Terms.  Capitalized terms used but otherwise not defined herein shall have the meaning ascribed to them in the Purchase Agreement.

3.    Acceptance of Assignment.  Assignee hereby accepts the assignment to it of the Security.

4.    Further Assurances.  Assignor and Assignee agree to execute such other documents and perform such other acts as may be reasonably necessary or proper and usual to effect this Assignment.

5.    Governing Law.  This Assignment shall be governed by and construed in accordance with the laws of the State of New York.

6.    Successors and Assigns.  This Assignment shall be binding upon and shall inure to the benefit of Assignor and Assignee and their respective personal representatives, heirs, successors and assigns.

7.    Counterparts. This Assignment may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument, and shall become effective when there exist copies hereof which, when taken together, bear the authorized signatures of each of the parties hereto.  Only one such counterpart signed by the party against whom enforceability is sought needs to be produced to evidence the existence of this Assignment.

*[Signature Page Follows]*

IN WITNESS WHEREOF, Assignor and Assignee have executed this Assignment as of November 20, 2015.

ASSIGNOR:

LA CHORAL SARL

By: _____
Name: _NDOBA HERVE_
Title: _MANAGING DIRECTOR / ASSOCIATE_

ASSIGNEE: _____

NH Consulting & Engineering Sarl

By: _____
Name: _NDOBA HERVE_
Title: _MANAGING DIRECTOR_

SUPREME COURT OF THE STATE OF NEW YORK COUNTY OF NEW YORK

-----------------------------------------------------------------------

NH Consulting & Engineering Sarl

**Plaintiffs,**

against

Earnshaw Associates Limited

**Defendant.**


-----------------------------------------------------------------------

STATE OF NEW YORK       ) **ss.:**

COUNTY OF __New York__ )

Johnnie Quaicoe, being duly sworn, deposes and says that:

1.       Deponent is the Sole Director of Earnshaw Associates Limited a company incorporated in the British Virgin Islands ("the "Defendant"), and is duly authorized to make this affidavit on behalf of the Defendant.

2.       The Defendant hereby confesses Judgment herein, and consents to and authorizes the entry thereof against it, in New York Supreme Court, New York County in the sum of Eighty Three Million One Hundred Thirty Six Thousand Two Hundred and Fifty One US Dollars ($83,136,251.00).

3.       This confession of judgment is for a debt justly due to the Plaintiffs arising from the following facts:

   a.       Pursuant to a Guaranty and Indemnity Agreement dated June 28th 2015 among Defendant, and NH Consulting and Engineering Sarl ("NH Consulting"), (hereby referred to as the "Plaintiff"), Defendant agreed to pay the Plaintiffs the sum of $83,136,251 Million (the "$83 Million

Payment Obligation"), and assumed joint and several liability for that $83 Million Payment Obligation. Also pursuant to the terms of that Supplemental Settlement Agreement, I have executed this Affidavit of Confession of Judgment to secure payment of Defendant's $83 Million Payment Obligation to Plaintiff.

b.   Defendant has not paid it's approximately $83 Million Payment Obligation under the Guaranty and Settlement Agreement, and no other payments have been made on the approximately $83 Million Payment Obligation to the Judgment Creditors.

c.   At present the amount that the Defendant owes to the Plaintiffs under the Supplemental Settlement Agreement is Eighty Three Million One Hundred Thirty Six Thousand Two Hundred and Fifty One US Dollars ($83,136,251.00).

4.   The amount confessed does not exceed the liability of the Defendant to the Plaintiff.

Johnnie Quaicoe
On behalf of Earnshaw Associates Limited

Sworn to before me this 13ᵗʰ

Day of June 13th, 2017

Notary Public

MINDY CHEN
NOTARY PUBLIC-STATE OF NEW YORK
No. 01-CH6289928
Qualified in Queens County
Certificates Filed in Albany, New York, and Kings Counties
My Commission Expires September 30, 2017

2

## ASSIGNMENT OF GUARANTY AND INDEMNITY

1.      Assignment of Guaranty and Indemnity agreement. Pursuant to that certain Guaranty and Indemnity Agreement (the "Guaranty Agreement") dated as of June 28th, 2015 by and between La Choral Sarl ("Original Assignor") and Earnshaw Associates ("Obligor")  as subsequently assigned to NH Consulting & Engineering Sarl ("Assignor"), Assignor hereby transfers, assigns, conveys, and delivers to Campion Maverick Inc, 9551 E Bay Harbor Drive, Miami Beach, Florida 33154 ("Assignee") all of Assignor's right, title, and interest in and to the Security owned by Assignor (the "Security").

2.      Defined Terms.  Capitalized terms used but otherwise not defined herein shall have the meaning ascribed to them in the Purchase Agreement.

3.      Acceptance of Assignment.  Assignee hereby accepts the assignment to it of the Security.

4.      Further Assurances.  Assignor and Assignee agree to execute such other documents and perform such other acts as may be reasonably necessary or proper and usual to effect this Assignment.

5.      Governing Law.  This Assignment shall be governed by and construed in accordance with the laws of the State of New York.

6.      Successors and Assigns.  This Assignment shall be binding upon and shall inure to the benefit of Assignor and Assignee and their respective personal representatives, heirs, successors and assigns.

7.      Counterparts. This Assignment may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument, and shall become effective when there exist copies hereof which, when taken together, bear the authorized signatures of each of the parties hereto. Only one such counterpart signed by the party against whom enforceability is sought needs to be produced to evidence the existence of this Assignment.

[*Signature Page Follows*]

IN WITNESS WHEREOF, Assignor and Assignee have executed this Assignment as of June 20, 2017.

ASSIGNOR:

NH Consulting & Engineering Sarl

By: _June 20, 2017_
Name: _NOOBA HERVE_
Title: _MANAGING DIRECTOR - OWNER_

NH CONSULTING & ENGINEERING
26 BP 1402 Abidjan 26
Tél: +225 20 32 07 80
Fax: +225 20 22 57 58

ASSIGNEE:

Campion Maverick Inc.

By:
Name: Ali farooq
Title: Ceo

#1067527 v4 \17401 \012

## ASSIGNMENT OF GUARANTY AND INDEMNITY

1.      <u>Assignment of Guaranty and Indemnity agreement</u>.  Pursuant to that certain Guaranty and Indemnity Agreement (the "Guaranty Agreement") dated as of June 28th, 2015 by and between NH Consulting & Engineering Sarl ("Assignor") and ONE57 79 Inc, a New York corporation, Assignor hereby transfers, assigns, conveys, and delivers to Campion Maverick Inc, 9551 E Bay Harbor Drive, Miami Beech, Florida 33154 ("Assignee") all of Assignor's right, title, and interest in and to the Security owned by Assignor (the "Security").

2.      <u>Defined Terms</u>.  Capitalized terms used but otherwise not defined herein shall have the meaning ascribed to them in the Purchase Agreement.

3.      <u>Acceptance of Assignment</u>.  Assignee hereby accepts the assignment to it of the Security.

4.      <u>Further Assurances</u>.  Assignor and Assignee agree to execute such other documents and perform such other acts as may be reasonably necessary or proper and usual to effect this Assignment.

5.      <u>Governing Law</u>.  This Assignment shall be governed by and construed in accordance with the laws of the State of New York.

6.      <u>Successors and Assigns</u>.  This Assignment shall be binding upon and shall inure to the benefit of Assignor and Assignee and their respective personal representatives, heirs, successors and assigns.

7.      <u>Counterparts</u>. This Assignment may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument, and shall become effective when there exist copies hereof which, when taken together, bear the authorized signatures of each of the parties hereto.  Only one such counterpart signed by the party against whom enforceability is sought needs to be produced to evidence the existence of this Assignment.

*[Signature Page Follows]*

IN WITNESS WHEREOF, Assignor and Assignee have executed this Assignment as of June 20, 2017.

ASSIGNOR:

NH Consulting & Engineering Sarl

By: _____
Name: Ndoba Herve
Title: Director


ASSIGNEE:


Campion Maverick Inc

By: _____
Name: Ali farooq
Title: Ceo