**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

| | |
|---|---|
| IN RE: | Chapter 11 |
| ONE57 79 INC., | Case No. 17-18433-RAM |
| Debtor. | |

**MOTION OF BANQUE HAVILLAND S.A. FOR AN ORDER GRANTING (I) RELIEF FROM THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(d)(1), OR, IN THE ALTERNATIVE, (II) ADEQUATE PROTECTION PURSUANT TO 11 U.S.C. § 361**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................... 1

JURISDICTION AND VENUE ........................................................... 4

FACTUAL BACKGROUND ............................................................... 5

A.    Purchase of Real Property ................................................. 5

B.    The Loan and the Collateral .............................................. 5

C.    Failure to Repay the Loan and Interest Thereon, the Standstill Agreement, and Subsequent Defaults ...................................... 9

D.    The Foreclosure Judgment and Pending Sale ................................ 12

E.    The Involuntary Petition and the Disconcerting Circumstances Related Thereto ........... 12

    1.    Lack of Facts Supporting Venue in the Southern District of Florida. ............... 12

    2.    The Undisclosed Earnshaw Ark Guaranty ............................. 14

    3.    The Untimely Execution of the One57 Ark Guaranty in Violation of the Loan Agreement and on the Eve of the Bankruptcy Petition .............. 15

    4.    Farooq as Petitioner and Debtor ............................... 16

    5.    Pasin as Director ........................................... 17

    6.    The Lack of an Operating Business ............................. 18

    7.    The Signatures Supporting Petitioner's Claim Do Not Appear to Be Genuine. ............... 19

RELIEF REQUESTED ................................................................. 22

BASIS FOR RELIEF REQUESTED ...................................................... 23

A.    The Court Should Grant Relief from the Automatic Stay for "Cause." ........... 23

    1.    The Failure to Insure and Maintain the Collateral Constitutes "Cause" to Lift the Automatic Stay. ........... 24

    2.    "Cause" Exists to Lift the Automatic Stay Because the Involuntary Case Was Filed In Bad Faith. ........... 25

        i.    The Petition Was Filed for an Improper Purpose ................... 26

        ii.    The Petition Constitutes an Improper Use of the Bankruptcy Process. ........... 27

        iii.    The Petition Was Filed in Bad Faith Under a Rule 9011 Test. ......... 30

    3.    "Cause" Exists Because this Case Involves a "Two-Party" Dispute. ......... 31

    4.    Waiver of the 14-Day Stay in Accordance with Bankruptcy Rule 4001(a)(3) ........... 32

B.    Alternatively, Movant Is Entitled to Adequate Protection of its Interest in the Collateral. ........... 32

NO PRIOR REQUEST ................................................................................................................ 33

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Albany Partners, Ltd. v. Westbrook (In re Albany Partners, Ltd.),*
  749 F.2d 670 (11th Cir. 1984) ...........................................................................25, 28

*Banque Havilland S.A. v. One57 79 Inc. et al.,*
  Index No. 850046/2017 (N.Y. Sup. Ct.) ....................................................................12

*Bell v. Sykes,*
  No. 15-15568, ___ Fed. App'x. ___, 2017 WL 957185 (11th Cir. Mar. 13,
  2017) .........................................................................................................................24

*In re Carco Partn.,*
  113 B.R. 735 (Bankr. M.D. Fla. 1990) ..................................................................25, 28

*In re Creative Fin., Ltd.,*
  543 B.R. 498 (Bankr. S.D.N.Y. 2016) ......................................................................26

*Disciplinary Bd. of Supreme Court of Pa. v. Feingold (In re Feingold),*
  730 F.3d 1268 (11th Cir. 2013) ...........................................................................24, 24

*In re GCC Realty Co., LLC,*
  No. 9:16-CV-81277, 2017 WL 1100535 (S.D. Fla. Mar. 24, 2017).........................1

*Gen. Trading, Inc. v. Yale Materials Handling Corp.,*
  119 F.3d 1485 (11th Cir. 1997) .......................................................................26, 27, 30

*In re Indigo Lakes, LLC v. Mitchell Pasin (In re Mitchell Pasin),*
  Adv. No. 10-3712-PGH, Case No. 10-32847-PGH (Sept. 25, 2015) ...............18, 30

*In re McGaughey,*
  24 F.3d 904 (7th Cir. 1994) ....................................................................................24

*In re Penn-Mont Benefit Servs., Inc.,*
  2013 WL 6405046 (Bankr. M.D. Fla. Dec. 06, 2013) .............................................29

*In re Phoenix-Piccadilly, Ltd.,*
  849 F.2d 1393 (11th Cir. 1988) ................................................................................27

*Shell Oil Co. v. Waldron (In re Waldron),*
  785 F.2d 936 (11th Cir. 1986) ................................................................................27

*In re Sheppard,*
  471 B.R. 45 (Bankr. W.D.N.Y. 2012) .....................................................................16

*In re Telegroup,*
    237 B.R. 87 (Bankr. D.N.J. 1999) ..................................................................24

*U.S.A. v. The M/Y Galactica Star et al.,*
    4:17-cv-02166 (S.D. Tex. July 14, 2017) .........................................................2

*Wortley v. Chrispus Venture Capital, LLC (In re Global Energies, LLC),*
    763 F.3d 1341 (11th Cir. 2014) .......................................................26, 27, 30

**Statutes**

11 U.S.C. § 101 ................................................................................................1

11 U.S.C. § 102(3) ..........................................................................................23

11 U.S.C. § 361 ..............................................................................1, 4, 5, 32

11 U.S.C. § 361(1) ..........................................................................................32

11 U.S.C. § 362(d)(1) ............................................................................ *passim*

11 U.S.C. § 523(a)(2) ................................................................................18, 30

11 U.S.C. § 523(a)(4) ................................................................................18, 30

11 U.S.C. § 523(a)(6) ................................................................................18, 30

 28 U.S.C. § 157 ............................................................................................1, 4

28 U.S.C. § 157(b)(2)(A) ..................................................................................4

28 U.S.C. § 157(b)(2)(G) ..................................................................................4

28 U.S.C. § 157(b)(2)(O) ..................................................................................4

 28 U.S.C. § 1334 ..............................................................................................4

28 U.S.C. § 1408 ....................................................................................4, 29, 30

28 U.S.C. § 1408(2) ........................................................................................13

28 U.S.C. § 1409 ..............................................................................................4

N.Y. Real Prop. Acts. Law § 1361 ..................................................................12

**Rules**

Fed. R. Bankr. P. 1014(a)(2) ..........................................................................29

Fed. R. Bankr. P. 4001 ................................................................................................1, 4

Fed. R. Bankr. P. 4001(a)(3) ..........................................................................23, 32, 33

Fed. R. Bankr. P. 9011 ...................................................................................................26

N.Y. C.P.L.R. 6501 ........................................................................................................16

S.D. Fla. L.R. 4001-1 ..................................................................................................1, 4

S.D. Fla. L.R. 9013-1 .......................................................................................................4

Banque Havilland S.A. ("Movant"), by and through its undersigned counsel, hereby moves (the "Motion") this Court for an order (i) granting immediate relief from the automatic stay for "cause," pursuant to section 362(d)(1) of title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code"), Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-1 of the Local Bankruptcy Rules (the "Local Rules") of the United States Bankruptcy Court for the Southern District of Florida (the "Court") to allow Movant to proceed with (a) a foreclosure sale on certain real property commonly known as 157 West 57th Street, Unit 79, New York, New York 10019 (the "One57 Property")[1] owned by One57 79 Inc. ("One57") or (ii) providing adequate protection pursuant to section 361 of the Bankruptcy Code.  In support of the Motion, Movant respectfully avers as follows:

## PRELIMINARY STATEMENT

1.      Movant seeks relief from the automatic stay for "cause" under section 362(d)(1) of the Bankruptcy Code.  Such "cause" includes (i) a lack of adequate protection of Movant's interest in its collateral and (ii) the fact that this bankruptcy case was commenced in bad faith.

2.      Movant's interest in its collateral is not adequately protected because (a) the fully-matured debt to Movant, in excess of €31,500,000 (or $ 37,000,000), increases monthly by over €670,000 (or $786,000) in interest and (b) neither One57 nor its parent company, Earnshaw Associates Limited ("Borrower"), is paying the expenses related to insurance or common area maintenance relating to the One57 Property.  In fact, their failure to pay necessary expenses to preserve the collateral has resulted in a mechanic's lien and a condominium association lien being filed against certain of Movant's collateral.

---

[1]  The One57 Property can also be identified as Tax Lot No. 1688 in Block 1010, Borough of Manhattan on the official Tax Map of the Real One57 Property Assessment Department of the City of New York.

3.      All indications are that the involuntary bankruptcy petitions against Borrower and One57 were filed in bad faith.   There is no legitimate basis for venue of the involuntary bankruptcy cases against One57or Borrower in this District.  The improper purpose and wrongful use of the bankruptcy process by Campion Maverick Inc. (the "Petitioner"), and One57, also constitute "cause" for relief from the automatic stay.[2]

4.      Moreover, as discussed in detail below, there is little doubt that the purported signatures supporting the alleged claim of Petitioner, the sole petitioning creditor, are not genuine.  One document was purportedly signed almost two years after the date in the preamble paragraph of the document.  One57 orchestrated the filing of the involuntary petition against itself by the Petitioner, a debt collector and manager of One57 and Borrower, in an effort to avoid a foreclosure sale scheduled for July 19, 2017, and to impede a forfeiture action (the "Forfeiture Action") commenced by the United States Government based on alleged fraud.  See Complaint, *U.S.A. v. The M/Y Galactica Star et al.*, 4:17-cv-02166 (S.D. Tex. July 14, 2017) (the "Forfeiture Complaint") ("This is an action in rem to forfeit approximately $144 million in assets, and any property traceable thereto, derived from an international conspiracy to obtain lucrative business opportunities in the Nigerian oil and gas sector in return for corruptly offering and giving millions of dollars' worth of gifts and benefits to the former Nigerian Minister for Petroleum Resources, Diezani Alison-Madueke  . . . and to subsequently launder the proceeds of the illicit business opportunities into and through the United States.").  Worse yet, the former principals of Borrower have resigned in a calculated effort to avoid having to appear in the United States and risk arrest.  In their stead, they have installed Mitchell (Mitch) Pasin, against whom the West Palm Beach Division of this Court previously entered a nondischargeable judgment for fraudulent and willful and malicious injury.

---

[2] Movant intends to file motions to dismiss the bankruptcy cases of, among others, Borrower and One57.

5.      Without limitation, and excluding the extensive allegations in the Forfeiture

Action, the bad faith conduct infecting this proceeding includes the following:

- Failing to disclose to Movant the alleged Earnshaw Ark Guaranty[3] in violation of the Loan Agreement (presumably with knowledge that Movant would not have extended the loan with and $83 million defaulted unsecured claim);

- Purporting to create an $83 million claim against One57, in violation of the Loan Agreement between Movant and Borrower and for the sole purpose of filing an involuntary bankruptcy petition against One57, approximately three weeks before such involuntary petition was filed, and with no meaningful consideration to One57;

- Purporting to create an $83 million claim against One57 pursuant to the One57 Ark Guaranty, on which the alleged signature lacks any resemblance to genuine signatures of the signatory;

- Farooq's participating on both sides of the involuntary petitions, acting as CEO of Petitioner (the sole petitioning creditor) and serving as manager of the subjects—both Borrower and One57—of such involuntary petitions, and as manager of Lightray for which Farooq signed a voluntary petition;

- Creating an entity (Lightray) just three weeks before filing a voluntary chapter 11 petition for that entity, which petition was signed by Farooq as manager;

- Purporting to transfer Aluko's equity in Borrower to Lightray in violation of the Equitable Mortgage Deed executed in Movant's favor by Aluko in an effort to give assets to Lightray solely for the purpose of its filing of a bankruptcy petition to frustrate Movant's legitimate exercise of its rights;

- Representing in documents filed with this Court that Borrower, One57, Lightray, and Aluko had a mailing address and lease for 3329 Flamingo Drive in Miami Beach, Florida, when the property at such address is a personal residence in an area zoned for personal residences and that is actually leased by an individual named Yigit Aral pursuant to a lease that prohibits subleasing;

- Misrepresenting to this Court at the July 27th hearing that Borrower was "absolutely" completely independent from Petitioner;

- Misrepresenting to this Court at the July 27th hearing that Borrower was engaged in an operating business involving the commercial chartering of

---

[3] Capitalized terms used in these bullet points have the meanings ascribed to them *infra*.

the Galactica Star when Borrower admits that it had not earned any such income in at least 18 months and where such commercial chartering is expressly prohibited by the Loan Agreement;

- Representing to this Court at the July 27th hearing that Borrower would return the Galactica Star to the Port of Miami, but then failing to do so;

- Failing to pay insurance and common area maintenance charges for the One57 Property;

- Failing to pay charges that have resulted in the imposition of a Mechanic's Lien against the One57 Property;

- Failing to pay insurance charges relating to the Galactica Star;

- Failing to pay for the services of the crew of the Galactica Star;

- Orchestrating involuntary petitions on the eve of the Foreclosure Sale—to which Borrower and One57 had specifically agreed in a court-approved stipulation—to delay or frustrate the Foreclosure Sale; and

- Appointing an individual (Pasin) as director when the Palm Beach Division of this Court entered a nondischargeable judgment against that person for fraud and willful and malicious injury, thereby further putting Movant's collateral at risk.

6.      Such conduct not only threatens to harm Movant's collateral, it also threatens the integrity of the bankruptcy process.  For the foregoing reasons, as discussed below, this Court should grant Movant relief from the stay for "cause."

## JURISDICTION AND VENUE

7.      The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (G) and (O).

8.      Venue for this Motion is proper in this Court pursuant to 28 U.S.C. § 1409. However, as discussed below, venue of this bankruptcy case is not properly in this Court pursuant to 28 U.S.C. § 1408.

9.      The statutory predicates for the relief requested herein are sections 362(d)(1) and 361 of the Bankruptcy Code, Bankruptcy Rules 4001 and Local Rules 4001-1 and 9013-1.

- 4 -

## FACTUAL BACKGROUND

### A.    Purchase of Real Property

10.    On December 8, 2014, Borrower, a British Virgin Islands company, wired $34,744,000 to Extell West 57th Street, LLC, which was the developer of an exclusive residential building at 157 West 57th Street in New York, New York, in connection with the purchase of the One57 Property.  On January 5, 2015, Borrower wired an additional $1,500,000 to Extell West 57th Street, LLC.

11.    The One57 Property is an exclusive condominium on "Billionaire's Row" in Manhattan, for which Borrower paid approximately $50 million.  Although Borrower provided at least some of the funds to purchase the One57 Property, title to the One57 Property was issued in the name of One57, a New York corporation and a wholly-owned subsidiary of Borrower.[4]

### B.    The Loan and the Collateral

12.    On or about September 3, 2015, Movant and Borrower entered into an English law governed Loan Agreement (together with any amendments and/or modifications, the "Loan Agreement") pursuant to which Movant provided Borrower with a term loan facility in the amount of up to Twenty Five Million Euros (€25,000,000.00) (the "Loan").  A true and correct copy of the Loan Agreement is attached as Exhibit A to the Declaration of Hector Pedro Birello in Support of (A) Motion of Banque Havilland S.A. for an Order Granting (I) Relief From the Automatic Stay Pursuant to 11 U.S.C. § 362(d)(1), Or, in the Alternative, (II) Adequate Protection Pursuant to 11 U.S.C. § 361 and (B) Motion of Banque Havilland S.A. for an Order Dismissing Bankruptcy Case (the "Declaration").

---

[4] On January 10, 2014 (i.e., five days after Borrower sent the final $1,500,000 wire to purchase the One57 Property), One57 was organized under the laws of the State of New York.

13. Pursuant to the Loan Agreement, Borrower promised to repay in full the Loan, together with accrued interest, at its maturity on September 5, 2016.  See Loan Agreement at §§ 4.1-4.2.

14. As of August 11, 2017, Movant is owed in excess of €31,500,000 under the Loan Agreement, all of which is due and payable.  Interest continues to accrue at the current per diem rate of €21,016 (or $24,683).

15. To secure its obligations under the Loan Agreement, Borrower mortgaged its interest in a 195-foot motor yacht named "Galactica Star" pursuant to a Cayman Islands law governed first-priority statutory ship mortgage filed with the Registrar of British Ships in the Cayman Islands on September 3, 2015 (the "Ship Mortgage") and accompanying English law governed Deed of Covenants dated September 3, 2015 (the "Deed of Covenants").  A true and correct copy of each of the Ship Mortgage and Deed of Covenants is attached to the Declaration as Exhibit B.

16. In its Chapter 11 Case Management Summary (the "Case Management Summary") executed by Ali Farooq ("Farooq") as Manager, Borrower asserts that the value of the Galactica Star is $40,000,000.[5]  True and correct copies of the Case Management Summaries for Borrower and One57 are attached to the Declaration as Composite Exhibit C.

17. To secure its obligations under the Loan Agreement, Borrower assigned all of its present and future rights, title and interest in, to and under any "Earnings, the Insurances and any Requisition Compensation of the Yacht," as those terms are defined in the English law governed General Assignment dated September 3, 2015 (the "General Assignment").  A true and correct copy of the General Assignment is attached to the Declaration as Exhibit D.

---

[5] On August 7, 2017, One57 also filed its Chapter 11 Case Management Summary executed by Ali Farooq as its Manager.

18.     To secure its obligations under the Loan Agreement, Borrower pledged, assigned and transferred its accounts (the "Collateral Accounts") to Movant, see Pledge Agreement dated September 3, 2015 (the "Account Pledge Agreement").    A true and correct copy of the Luxembourg law governed Account Pledge Agreement is attached to the Declaration as Exhibit E.   As of August 11, 2017, the balance in the Collateral Accounts, which are titled in Borrower's name and located in Luxembourg, is approximately €9,000,000 (or $10,570,000).

19.     To secure its obligations under the Loan Agreement, Borrower also pledged, assigned and transferred its equity in One57 to Movant, see New York law governed Pledge Agreement dated September 9, 2015 (the "Equity Pledge Agreement").   A true and correct copy of the Equity Pledge Agreement is attached to the Declaration as Exhibit F.

20.     Pursuant to the laws of the British Virgin Islands, the security or "charges" against Borrower's assets were filed with the Registrar of Corporate Affairs.   A true and correct copy of the registered charges is attached to the Declaration as Exhibit G.

21.     One57 executed an irrevocable and unconditional English law governed Deed of Guarantee and Indemnity (the "One57 Guarantee") in favor of Movant.   A true and correct copy of the One57 Guarantee is attached to the Declaration as Exhibit H.

22.     Pursuant to the One57 Guarantee, One57 guaranteed all of Borrower's obligations under the Loan Agreement.   See One57 Guarantee (Exhibit H) at § 2.1.

23.     On September 9, 2015, to secure its obligations up to the principal amount of $35,342,203.36, plus interest, under the One57 Guarantee, One57 executed a Mortgage, Assignment of Leases and Rents and Security Agreement (the "Mortgage") in favor of Movant.

24.     Pursuant to the Mortgage, One57 provided Movant with a first-priority mortgage lien upon the One57 Property.[6]

25.      The Mortgage was filed with the Office of the City Register of the City of New York at CRFN 2015000347899.   A true and correct copy of the Mortgage is attached to the Declaration as Exhibit I.

26.     The Movant received a valuation, as of April 21, 2016, of the One57 Property in the amount of $47,000,000.   A true and correct copy of such valuation is attached to the Declaration as Exhibit J.

27.     Kolawole Aluko ("Aluko") also executed and delivered to Movant an English law governed Guarantee and Indemnity dated September 3, 2015 (the "Aluko Guarantee").   Pursuant to the Aluko Guarantee, Aluko guaranteed all of Borrower's obligations under the Loan Agreement.   See Aluko Guarantee at § 2.1.   A true and correct copy of the Aluko Guarantee is attached to the Declaration as Exhibit K.

28.     Pursuant to a British Virgin Islands governed Equitable Mortgage (Deed) dated September 3, 2015 (the "Equitable Mortgage Deed," and together with the Loan Agreement, the Ship Mortgage, the Deed of Covenants, the General Assignment, the Account Pledge Agreement, the Equity Pledge Agreement, the One57 Guarantee, the Mortgage, and the Aluko Guarantee, the "Loan Documents"), Aluko pledged his equity interest in Borrower to Movant as additional collateral for the Loan.   A true and correct copy of the Equitable Mortgage (Deed) is attached to the Declaration as Exhibit L.

29.     Pursuant to the Standstill Agreement (as defined below), to further secure the obligations under the Loan Agreement, 1049 5th Avenue Inc. ("1049"), a subsidiary of

---

[6] The One57 Property is also encumbered by a mechanic's lien and a lien in favor of the One57 Property condominium association.

Borrower, executed a Deed of Guarantee and Indemnity dated January 27, 2017 (the "1049 Guarantee").  A true and correct copy of the 1049 Guarantee is attached to the Declaration as Exhibit P.

30.    Pursuant to the 1049 Guarantee, 1049 guaranteed all of Borrower's obligations under the Loan Agreement.  See 1049 Guarantee (Exhibit P) at § 2.1.

31.    On January 27, 2017, to secure up to $1,500,000 of its obligations under the 1049 Guarantee, 1049 executed a Mortgage, Assignment of Leases and Rents and Security Agreement (the "1049 Mortgage") in favor of Movant upon Apartments 11B and 12B, Maids Room 13, and Storage Units 31 and 32, in the building known as and by the street address of 1049 5th Avenue in New York, New York 10028 (the "1049 Property").

32.    Pursuant to the 1049 Mortgage, 1049 provided Movant with a first-priority mortgage lien upon the 1049 Property.

33.    The 1049 Mortgage was filed with the Office of the City Register of the City of New York at CRFN 2017000161259.  A true and correct copy of the 1049 Mortgage is attached to the Declaration as Exhibit Q.

34.    In its Case Management Summary, Borrower values the 1049 Property (which was built in 1928) at approximately $10,000,000.  See Case Management Summary (Exhibit C).

**C.    Failure to Repay the Loan and Interest Thereon, the Standstill Agreement, and Subsequent Defaults**

35.    On September 5, 2016, Borrower failed to make the interest payment (€225,000) and principal payment (€25,000,000) due upon maturity of the Loan.  Borrower's failure to make such payments constituted an Event of Default under the Loan Documents.  See, e.g., Loan Agreement (Exhibit A) at § 17.1(a); One57 Guarantee (Exhibit H) at § 2.1.1; Mortgage at p. 1 (incorporating definitions in Loan Agreement).

36.     One57 did not pay the outstanding principal or interest as required by the One57 Guarantee.

37.     On October 6, 2016, Movant issued a written notice of one or more Events of Default under the Loan Documents (the "Default Notice").   A true and correct copy of the Default Notice is attached to the Declaration as Exhibit M.

38.     As set forth in the Default Notice, Movant notified Borrower, One57, and Aluko of, among others, the following Events of Default (i) Borrower's failure on September 5, 2016, to repay the €25,000,000 Loan and interest thereon in the amount of €225,000.00, (ii) One57's permitting a mechanic's lien dated August 4, 2016, to encumber the One57 Property in the amount of $75,459.35 (the "Mechanic's Lien"), (iii) One57's failure to promptly discharge the Mechanic's Lien.   See Default Notice (Exhibit M).   A true and correct copy of the filed Mechanic's Lien is attached to the Declaration as Exhibit N.

39.     On December 9, 2016, Borrower, One57, Aluko, and Movant entered into a forbearance agreement (the "Standstill Agreement").   Under the Standstill Agreement, Borrower, One57 and Aluko agreed that (i) certain Events of Default had occurred under the Loan Documents and such Events of Default were not timely cured; (ii) €25,000,000 in outstanding principal plus €1,836,638.40 in accrued interest (with interest continuing to accrue at the default rate of twenty four percent (24%) [7] under the Loan Documents, and approximately €70,000.00 in expenses, was owed to Movant; (iii) Movant was entitled to foreclose the Mortgage on the One57 Property; and (iv) Borrower, One57, and Aluko consented to foreclosure of the Mortgage. A true and correct copy of the Standstill Agreement is attached to the Declaration as Exhibit O.

40.     The referenced Events of Default continue to exist and have not been cured.

---

[7] See, e.g., Loan Agreement (**Exhibit A**) at § 6.3; One57 Guarantee (**Exhibit H**) at § 2.2.

41.    Borrower and One57 have continued to breach their agreements with Movant. One57 has continued to breach the One57 Mortgage by continuing its failure to pay fees and expenses related to the One57 Property.  See Mortgage (Exhibit I) at §§ 26(a) and 29(c).

42.    For example, One57 failed to pay common area maintenance fees totaling $64,331.37 for just the six months prior to January 1, 2017.   On January 27, 2017, the condominium association filed a lien for that amount with the Office of the City Register of the City of New York, CRFN #2017000039156.  See Notice under the Condominium Act of Unpaid Charges, a true and correct copy of which is attached to the Declaration as Exhibit R.  The condominium association has advised Movant that the condominium fee arrearages, as of August 1, 2017, total $150,094.29.

43.    Borrower also has not been paying the insurance for, or the crew on, the Galactica Star, which is now believed to be located near Cancun, Mexico. The Movant has transferred approximately €120,000 to the yacht manager to pay for the yacht insurance and the services of the crew.  See Exhibit S (insurance invoice and swift payment information) to the Declaration.

44.    Borrower is subject to litigation in Mexico by an alleged creditor seeking to put a $6.120 million lien on the Galactica Star.  See copy of Complaint filed by Jose Enrique Urunuela Lopez against Borrower and Aluko, a true and correct copy of which is attached as Exhibit KK.[8]

45.    Borrower has not made good on its counsel's promise to dock the Galactica Star in Miami, Florida.  See Transcript of July 27, 2017 Hearing ("Tr. of 7/27/17 Hrg.") at 36:4-9 and 37:10-14.

---

[8] This alleged creditor is an individual lender, a lawyer in Mexico, who supposedly lent $6.120 million to Borrower in April 2015.  Borrower allegedly did not make a single $170,000 monthly due on the note, and the putative lender—an attorney—did not take any action until June 30, 2017.   Conversely, Borrower's list of Top 20 Largest Unsecured Creditors describes the nature of the debt as "yacht-repairs."  See ECF #23.  In any event, this creditor seeks to impose a lien on the Galactica Star, on which the Movant has the first priority lien.  Movant will provide a certified translation of the Complaint at or prior to the hearing.

**D.**      **The Foreclosure Judgment and Pending Sale**

46.      On January 26, 2017, as agreed in the Standstill Agreement, Movant filed a Verified Complaint (the "Complaint") in the Supreme Court of the State of New York (the "New York Court"), to foreclose the Mortgage on the One57 Property.  *See Banque Havilland S.A. v. One57 79 Inc. et al.*, Index No. 850046/2017 (N.Y. Sup. Ct.).

47.      On April 3, 2017, Borrower, One57, and Movant entered into a "So Ordered" Stipulation of Settlement and Consent to Immediate Entry of Judgment of Foreclosure (the "Stipulation"), pursuant to which the parties agreed to the immediate entry of judgment of foreclosure and sale in the foreclosure action.  Id. at N.Y. ECF No. 13.  A true and correct copy of the Stipulation is attached to the Declaration as Exhibit T.

48.      On June 7, 2017, pursuant to the Stipulation, the New York Court entered an order (the "Foreclosure Judgment") in favor of Movant, ordering, among other things, that the One57 Property be sold at a public auction.  Id. at N.Y. ECF No. 27.  A true and correct copy of the Foreclosure Judgment is attached to the Declaration as Exhibit U.

49.      On July 19, 2017, a foreclosure sale of the One57 Property (the "Sale") was scheduled to take place.[9]

**E.**      **The Involuntary Petition and the Disconcerting Circumstances Related Thereto**

**1.**      **Lack of Facts Supporting Venue in the Southern District of Florida.**

50.      In the involuntary petition filed against Borrower, the Petitioner asserted that "over the last 180 days before the filing of this bankruptcy, the debtor had a domicile, principal place of business, or principal assets in this district longer than in any other district."  See Involuntary Petition against Borrower, Part 3, Section 10.

---

[9] If the foreclosure sale had taken place, One57 would have been entitled to file a claim, pursuant to N.Y. Real Prop. Acts. Law § 1361, for any surplus Sale proceeds deposited with the New York County Clerk.

51.     Borrower is a British Virgin Islands entity and is not domiciled in, and does not have its principal place of business in, this District.  Borrower does not appear to have any meaningful assets, let alone its principal assets, in the Southern District of Florida.  Borrower's wholly-owned subsidiaries are (or were) either California (Wamdara, Inc., Dame Investments Inc. and Wadlaks Investments Inc.)[10] or New York (One57 and 1049[11]) entities.  Borrower's yacht (Galactica Star) is registered in the Cayman Islands.  Moreover, based upon the vessel report for the Galactica Star, it was not in this District during the 180 days preceding the involuntary petition.  A true and correct copy of the vessel report is attached to the Declaration as Exhibit V.

52.     With respect to One57, the Petitioner asserts only that venue of this case is proper in this District because a bankruptcy case concerning Borrower, an affiliate of One57, is pending in this District.  See 28 U.S.C. § 1408(2); Involuntary Petition, Part 3, Section 10.

53.     Moreover, One57 is a New York entity, and its sole meaningful asset is the One57 Property in New York City.  One57 has no connection to this District.

54.     The involuntary petition filed against One57, however, lists "3329 Flamingo Drive" in Miami Beach, Florida, as the Debtor's "mailing address."  One57's Case Management Summary provides that One57 has "leased premises for [its] business located at: 3329 Flamingo Dr., Miami Beach, FL 33140."   See Composite Exhibit C.

55.     3329 Flamingo Drive is a personal residence in an area zoned for personal residence,

_____

[10] The principal assets of Wamdara are the properties located at 807 and 815 Cima Del Mundo Road in Montecito, California.  Dame Investments Inc., a California corporation, was dissolved on April 17, 2017. The principal assets of Dame Investments Inc. were the properties located at 1948 and 1952 Tollis Avenue in Santa Barbara California.  Wadlaks Investments Inc., a California corporation, was dissolved on April 12, 2017.  The principal asset of Wadlaks Investments Inc. was the property located at 755 Sarbonne Road in Los Angeles, California.  See title searches, true and correct copies of which are attached to the Declaration as **Exhibit II**.
[11] The principal asset of 1049 is an interest in real property located at 1049 5th Avenue in New York, New York.

56.      One57 is not a lessee of 3329 Flamingo Drive, at least not pursuant to any legitimate lease.  In fact, the owners of the property and the true tenant are engaged in legal proceedings because of the tenant's listing of the property on "Airbnb" for short-term rentals (i.e., a week or so).  On June 9, 2017, the owners of the Flamingo Drive property (William R. Holloway and Jean Louis Denoit) filed a Complaint for Eviction and Damages ("Eviction Complaint") against Yigit Aral, the tenant of the Flamingo Drive property.   See Eviction Complaint, a true and correct copy of which is attached to the Declaration as part of Exhibit JJ. Aral signed a one-year lease for the property commencing October 1, 2016.   See Eviction Complaint (Exhibit JJ) at ¶ 8, p. 2.  Aral's lease expressly precludes subleasing.  See Eviction Complaint (Exhibit JJ) at ¶ 9, p. 2; Lease (Exhibit 1 to the Eviction Complaint) at ¶ 11).   The owners alleged that Aral improperly listed the property on Airbnb for short-term leases.   See Eviction Complaint at ¶¶ 5, 10 and 12-14.  Aral denies the allegations.  See Answer to Eviction Complaint, a true and correct copy of which is attached to the Declaration as part of Exhibit JJ. One of two things is true:  (i) Aral is being truthful and did not lease the property to anyone, including One57, or (ii) Aral signed a bogus sublease with Borrower and One57 that violated the terms of his lease and which did not involve Borrower's or One57's actual use of the leased premises, a residence, for its business, but rather was designed to manufacture venue.

2.      **The Undisclosed Earnshaw Ark Guaranty**

57.      On October 20, 2012, La Chorale Sarl ("La Chorale"), a company formed pursuant to the law of the Ivory Coast, and Ark Exploration and Production Holdings LTD ("Ark Exploration"), a company organized pursuant to the laws of the British Virgin Islands, allegedly entered into a debt settlement agreement (the "Debt Settlement Agreement").  A true and correct copy of the alleged Debt Settlement Agreement is attached to the Declaration as Exhibit W.  Ark Exploration allegedly subsequently defaulted under the terms of the Debt Settlement Agreement.

58.     On June 28, 2015, to induce La Chorale to forbear from taking any enforcement action pursuant to the Debt Settlement Agreement, Borrower allegedly executed a Guaranty and Indemnity (the "Earnshaw Ark Guaranty") pursuant to which Borrower guaranteed Ark Exploration's obligations under the Debt Settlement Agreement.  A true and correct copy of the alleged Earnshaw Ark Guaranty is attached to the Declaration as Exhibit X.

59.     The execution of the Earnshaw Ark Guaranty on June 28, 2015, is evidence of bad faith.  In the Loan Agreement, executed approximately two months after the Earnshaw Ark Guaranty, Borrower represented and warranted that neither Borrower nor any of its subsidiaries was in default of any obligation that would result in a material adverse effect.  See Loan Agreement at § 11.10(b).

**3.      The Untimely Execution of the One57 Ark Guaranty in Violation of the Loan Agreement and on the Eve of the Bankruptcy Petition**

60.     On or about November 20, 2015, La Chorale allegedly assigned its claims under the Debt Settlement Agreement and the Earnshaw Ark Guaranty to NH Consulting & Engineering Sarl ("NH Consulting") pursuant to that certain Assignment of Guaranty and Indemnity.  A true and correct copy of the alleged Assignment of Guaranty and Indemnity is attached to the Declaration as Exhibit Y.

61.     On June, 9, 2017—three weeks before the filing of an bankruptcy petition against it--One57 purportedly signed a Guaranty and Indemnity Agreement (the "One57 Ark Guaranty").  In its preamble paragraph, the One57 Ark Guaranty is dated June 28, 2015—almost two years before One57 purportedly signed it.  Pursuant to the alleged One57 Ark Guaranty, One57 guaranteed all of Ark Exploration's obligations under the Debt Settlement Agreement.  A true and correct copy of the alleged One57 Ark Guaranty is attached to the Declaration as Exhibit Z.

62.     In the One57 Guarantee, One57 agreed that it would not execute any guarantee without Movant's prior consent. See Loan Agreement at § 10.11.2.  Movant did not (and does not) consent to the One57 Ark Guaranty.  Thus, the alleged execution of the One57 Ark Guaranty is further evidence of bad faith.

63.     Apparently, on June 13, 2017, Borrower executed a confession of judgment (the "Confession of Judgment") in favor of NH Consulting, whereby Borrower agreed to NH Consulting's confession of judgment with respect to the obligations due under the Earnshaw Ark Guaranty.[12]

64.     On June 20, 2017, pursuant to Assignments of Guaranty and Indemnity, NH Consulting assigned its rights under the Earnshaw Ark Guaranty and the One57 Ark Guaranty to Petitioner, allegedly a collection company, pursuant to those certain Assignments of Guaranty and Indemnity.  The Assignments of Guaranty and Indemnity were accepted by Farooq, as Petitioner's, CEO.  A true and correct copy of the Assignments of Guaranty and Indemnity are attached, respectively, to the Declaration as Exhibits AA and BB.

**4.     Farooq as Petitioner and Debtor**

65.     On July 3, 2017, the Petitioner filed an involuntary petition against each of Borrower (17-18432-RAM) and One57 (17-18433-RAM) for relief under chapter 7 of the Bankruptcy Code.

---

[12] Even assuming that the Confession of Judgment is valid or somehow supports a claim against One57, the Confession of Judgment was executed nearly five months after Movant's Notice of Pendency [N.Y. ECF No. 5] (the "Notice of Pendency").  Under New York law, a judgment creditor whose judgment was recovered after the filing of a notice of pendency is bound by all proceedings taken in the action after the filing of the notice to the same extent as if he were a party to the action, and such judgment creditor's rights are extinguished by a judgment in the foreclosure action.  See N.Y. C.P.L.R. § 6501 (McKinney); *In re Sheppard*, 471 B.R. 45, 50 (Bankr. W.D.N.Y. 2012) ("A person whose conveyance or incumbrance is recorded after the filing of the notice [of pendency] is bound by all proceedings taken in the action after such filing to the same extent as a party.").  Thus, the prior filing of the Notice of Pendency and the related Foreclosure Judgment preclude the Petitioner from asserting any defense to the foreclosure and extinguish any purported lien on the One57 Property relating to the alleged Confession of Judgment.  Understanding this, the Petitioner filed the involuntary petition in a bad faith attempt to delay or frustrate the Sale.

66.     At a July 27th hearing, counsel for Borrower unequivocally stated that Borrower was totally independent from the Petitioner, as follows:

>    The Court:  . . . Are you proffering that you're totally independent from the petitioning creditor--
>
>    Mr. Thomas:  Absolutely.

See Tr. of 7/27/17 Hrg. at 37:21-24.

67.     Although it was not disclosed to this Court at the July 27th hearing, Farooq is also the manager of both Borrower and One57.  See Case Management Summaries (Composite Exhibit C).  In other words, Farooq filed an involuntary petition—on behalf of the Petitioner for which Farooq is the CEO—against Borrower and One57, for which Farooq is the manager!

68.     On July 25, 2017, Farooq—this time as manager of Lightray Capital, LLC—filed a voluntary chapter 11 petition on behalf of Lightray (17-19338-RAM), the alleged holder of 100% of the equity in Borrower, which was held by Aluko and pledged to Movant.  Lightray was created on July 6, 2017, pursuant to the laws of the State of Florida, less than three weeks before Farooq filed the voluntary chapter 11 bankruptcy petition on Lightray's behalf.

69.     Although Lightray claims to be the owner of the equity in Borrower, Aluko pledged such equity to Movant.  See Equitable Mortgage Deed (Exhibit L) at § 3.2.  Aluko (and Borrower) agreed that there could be no transfer of the equity in Borrower without Movant's prior written consent.  See, e.g., Equitable Mortgage Deed (Exhibit L) at §§ 6.3 and 7.1(a)(2).

70.     On July 26, 2017, the Petitioner filed an involuntary petition against Aluko (17-19348-LMI).

**5.     Pasin as Director**

71.     By an email sent on July 18, 2017, Quaicoe advised Movant that "new directors herein copied," replacing IWM S.A. as director, would provide information regarding the

resignation of IWM (for which Quaicoe was the CEO).  The "new director" copied on the email was "Mitch Pasin."  See July 18, 2017 Email from Quaicoe, a true and correct copy of which is attached to the Declaration as Exhibit GG.

72.    In September of 2015, the West Palm Beach Division of this Court entered a nondischargeable judgment against Mitch Pasin for fraudulent and willful and malicious conduct.  See Final Judgment, *In re Indigo Lakes, LLC v. Mitchell Pasin (In re Mitchell Pasin)*, Adv. No. 10-3712-PGH, Case No. 10-32847-PGH (Sept. 25, 2015) (entering judgment in the amount of $270,025 and holding that it is nondischargeable under sections 523(a)(2), (a)(4) and (a)(6) of the Bankruptcy Code), a true and correct copy of which is attached to the Declaration as Exhibit HH.  The appointment of Pasin as a director puts Movant's collateral at even greater risk.

### 6.    The Lack of an Operating Business

73.    At the July 27th hearing, Borrower claimed that it had an operating business.  See Tr. of 7/27/17 Hrg. at 40:1- 5 ("The Court:  So there's no actual operating business with --- Mr. Thomas:  Yes, there are.  Here's the operating business.   The yacht is leased – is chartered for $450,000 a week. . . . ").  In its Case Management Summary, Borrower also lists investment management (i.e., ownership of assets) and "operation of a Charter Yacht" as its business.  See Case Management Summary (Composite Exhibit C) at § 3.  More candidly, however, Borrower concedes as follows in its Case Management Summary:  "Debtor's fiscal or calendar year to date gross income and the debtor's gross income for the calendar or fiscal year prior to the filing of this petition:  No known income."  See Id. at § 7.  Accordingly, despite representing to the Court that Borrower was engaged in the business of chartering the Galactica Star, Borrower acknowledges that it has no known income for the last 18 months.

74.    The Loan Agreement expressly precludes the commercial chartering of the Galactica Star.  See Loan Agreement (Exhibit A) at § 15.3(d) ("The Borrower undertakes . . . to

ensure that the Yacht shall be used exclusively for private services to the Shareholder, his family and friends and shall not be made available for any commercial charter or other such employment whatsoever.").   Thus, despite its representations to this Court, Borrower has (and can have) no legitimate yacht chartering business.

**7.      The Signatures Supporting Petitioner's Claim Do Not Appear to Be Genuine.**

75.      The circumstances surrounding the involuntary petition against One57, at a minimum, are quite troubling.  But, it gets even worse.

76.      First, the purported signatures on the documents allegedly supporting the Petitioner's claim do not appear to be even remotely genuine.

77.      The alleged signature of Johnnie Quaicoe ("Quaicoe"), as authorized representative of One57, on the One57 Ark Guaranty[13] (**Exhibit Z**) is as follows:



Johnnie Quaicoe
Authorized Representative
One57 79 Inc

78.      That purported signature of Quaicoe on the One57 Ark Guaranty looks nothing like the signature of Quaicoe on the Earnshaw Ark Guaranty (**Exhibit X**), which was signed by Quaicoe on June 28, 2015:

---

[13] As discussed further *infra,* the One57 Ark Guaranty is dated June 28, 2015, but was allegedly signed almost two years later on June 9, 2017.



Johnnie Quaicoe
Sole Director
Earnshaw Associated Limited

79.    The purported signature of Quaicoe on the One57 Ark Guaranty also looks nothing like the signature of Quaicoe on his passport or on other documents in Movant's file (see additional signature exemplars in **Exhibit CC** to the Declaration):



Adopted and signed this 14th day of July 2015.

EARNSHAW ASSOCIATES LIMITED

IWM Associates Ltd – Director

- 20 -

Adopted and signed this 4ᵗʰ of July 2017.

**EARNSHAW ASSOCIATES LIMITED**

IWM Associates Ltd - Director

80.     The Quaicoe signature exemplars (**Exhibit CC**) leave little doubt that the alleged signature of Quaicoe on the One57 Ark Guaranty (**Exhibit Z**) is **not** genuine.

81.     The mischief, however, does not end there.  In the preamble paragraph, the One57 Ark Guaranty is dated June 28, 2015 (Exhibit Z), but it was not (allegedly) signed by Quaicoe until almost two years later on June 9, 2017.

82.     Additionally, inconsistent signatures of Ndoba Herve ("Herve") also compound the wrongdoing.  Specifically, the signature of Herve on the alleged assignment of the One57 Ark Guaranty to NH Consulting looks nothing like Herve's signature on the assignment of the Earnshaw Ark Guaranty to NH Consulting, even though both documents were allegedly signed on the same date, June 20, 2017:  See Assignments of Guaranty and Indemnity (Exhibits AA and BB):

IN WITNESS WHEREOF, Assignor and Assignee have executed this Assignment as of June 20, 2017.

ASSIGNOR:

NH Consulting & Engineering Sarl

By: _____

Name:  Ndoba Herve

Title:  Director

IN WITNESS WHEREOF, Assignor and Assignee have executed this Assignment as of June 20, 2017.

ASSIGNOR:

NH Consulting & Engineering Sarl

By: _June 20, 2017_____
Name: _NOOBA HERVE_____
Title: _MANAGING DIRECTOR - OWNER_

NH CONSULTING & ENGINEERING
26 BP 1402 Abidjan 26
Tél: +225 20 32 07 80
Fax: +225 20 22 57 58

ASSIGNEE:

## **RELIEF REQUESTED**

83.     By this Motion, Movant respectfully requests that the Court enter an order, substantially in the form attached to the Declaration as **Exhibit EE**, (i) granting relief from the automatic stay pursuant to section 362(d)(1) of the Bankruptcy Code to allow Movant to (a) complete the foreclosure sale of the One57 Property and apply the proceeds to the balance of the Loan, or (ii) in the alternative, providing adequate protection of Movant's interest in the collateral by (a) requiring One57 to (1) timely pay monthly interest to Movant at the current rate of interest (default rate), (2) maintain, timely pay for, and comply with liability and hazard insurance at all times for the One57 Property as required by the Loan Documents, and (3) timely pay all common area maintenance charges relating to the One57 Property and (b) conditioning the stay on One57 timely making all such payments, continually maintaining liability and hazard

insurance as required by the Loan Documents and maintaining compliance with such insurance policies,, and continually paying all condominium association fees and expenses relating to the One57 Property, (iii) waiving the 14- day stay set forth in Bankruptcy Rule 4001(a)(3), and (iv) granting such further relief to Movant as is appropriate.

## BASIS FOR RELIEF REQUESTED

### A.    The Court Should Grant Relief from the Automatic Stay for "Cause."

84.    Section 362(d)(1) of the Bankruptcy Code provides that the Court "shall" grant relief from the stay "for cause, including the lack of adequate protection of an interest in property."  11 U.S.C. § 362(d)(1).

85.    Other than by reference to a non-exclusive[14] example of "lack of adequate protection," the term "cause" is not defined in section 362(d)(1) of the Bankruptcy Code.  See *Disciplinary Bd. of Supreme Court of Pa. v. Feingold (In re Feingold)*, 730 F.3d 1268, 1277 (11th Cir. 2013).  Accordingly, courts are left "to consider what constitutes cause based on the totality of the circumstances in each particular case."  Id. (quoting Baldino v. Wilson (In re Wilson), 116 F.3d 87, 90 (3d Cir. 1997) (internal quotation marks omitted)).

86.    "There is no set list of circumstances that a bankruptcy court is required to consider in evaluating whether § 362(d)(1) 'cause' exists to lift the automatic stay.  Rather, courts evaluating whether to grant stay relief have looked to a variety of case-specific factors, including (1) whether the debtor has acted in bad faith; (2) the 'hardships imposed on the parties with an eye towards the overall goals of the Bankruptcy Code,' and (3) pending state court proceedings."  *Feingold*, 730 F.3d at 1277 (citations omitted).

---

[14] The term "including" is not limiting.  <u>See</u> 11 U.S.C. § 102(3).

**1.      The Failure to Insure and Maintain the Collateral Constitutes "Cause" to Lift the Automatic Stay.**

87.     A debtor's failure to provide adequate protection of a creditor's interest in property constitutes "cause" for granting relief from the stay for cause.  See *In re McGaughey*, 24 F.3d 904, 906 (7th Cir. 1994); see also, e.g., *In re Telegroup*, 237 B.R. 87, 91 (Bankr. D.N.J. 1999).

88.     Movant is entitled to adequate protection to protect against diminution in the value of the One57 Property.  One57 has offered no adequate protection of Movant's interest in the One57 Property.  One57 has permitted a mechanic's lien to encumber the One57 Property.  One57 has continued its failure to maintain the One57 Property, and the condominium association has advised Movant that the condominium fee arrearages, as of August 1, 2017, total $150,094.29.

89.     Moreover, state court proceedings in New York are pending.   In fact, approximately four months ago, pursuant to the Standstill Agreement, Borrower, One57, and Movant agreed that the foreclosure proceedings, including a sale, relating to the One57 Property would be consummated.   A Foreclosure Judgment has already been entered and is final and nonappealable.[15]   A foreclosure Sale was scheduled for July 19, 2017.  The existence (and later stages) of such state court proceedings—to which Borrower and One57 agreed—support the conclusion that stay relief is appropriate.  See *Feingold*, 730 F.3d at 1277.

90.     Worse yet, One57's failure to pay expenses relating to the One57 Property has resulted in a $75,459.35 mechanic's lien on the One57 Property and a condominium association lien for unpaid common area maintenance fees totaling $64,331.37 for just the six months prior to January 1, 2017.  See Exhibits N and R.  The condominium association has advised Movant

---

[15] The Rooker-Feldman doctrine bars any collateral attack on the Foreclosure Judgment.  See *Bell v. Sykes*, No. 15-15568, ___ Fed. App'x. ___, 2017 WL 957185, at *1 (11th Cir. Mar. 13, 2017).

that the condominium fee arrearages, as of August 1, 2017, total $150,094.29 and continue to accrue.

91.    Movant believes that One57 has no intention of making any payments on the Loan because One57 already has consented to entry of the Foreclosure Judgment and the Sale and failed to pay expenses that resulted in the Mechanic's Lien and condominium association's liens on the One57 Property.[16]

92.    Accordingly, the Court should grant Movant relief from the automatic stay pursuant to section 362(d)(1) of the Bankruptcy Code to allow Movant to complete the sale of the One57 Property and apply the proceeds to the balance of the Loan.

**2.    "Cause" Exists to Lift the Automatic Stay Because the Involuntary Case Was Filed In Bad Faith.**

93.    The involuntary petition was filed to frustrate Movant's legitimate right to proceed with the Sale.  Worse yet, the petition was filed based upon a claim that appears to be the product of forgery or other misconduct.   The fact that this case was filed in bad faith constitutes "cause" for relief from the automatic stay.  See *Albany Partners, Ltd. v. Westbrook (In re Albany Partners, Ltd.)*, 749 F.2d 670, 675 (11th Cir. 1984) ("we cannot say that the bankruptcy court abused its discretion by granting such relief in this case, particularly in light of the finding that the petition was not filed in good faith"); *In re Carco P'ship*, 113 B.R. 735, 739 (Bankr. M.D. Fla. 1990) ("This Court fully understands the edict of the Eleventh Circuit that a bad faith filing is cause for relief from the automatic stay under Section 362(d)(1)."); In re

---

[16] Borrower has done no better preserving and protecting its assets.  Borrower has failed to maintain insurance on the Galactica Star, failing to pay €71,821.30 due for indemnity insurance.  Borrower also failed to pay the yacht manager for the services of the yacht crew.  Movant had to pay approximately €120,000 to the yacht manager to pay for the yacht insurance and the July 2017 services of the crew in order to avoid dismissal of the crew, abandonment of the yacht or the potential for an uninsured loss.  See **Exhibit S**.  In Borrower's Case Management Summary (see **Composite Exhibit C**), Borrower stats that it has (allegedly) permitted arrest of the vessel in Mexico.  Borrower potentially has subjected the Galactica Star to a lien in the amount of $6.120 million.  See Complaint (**Exhibit KK**).[16]  Borrower also has not made good on its counsel's promise to dock the Galactica Star in Miami, Florida. See Tr. of 7/27/17 Hrg. at 36:4-9 and 37:10-14.

*Creative Fin., Ltd.*, 543 B.R. 498, 523 (Bankr. S.D.N.Y. 2016) ("relief from the stay, for cause, has long been a classic remedy for bad faith filing").

94.    As the Eleventh Circuit has recognized, there are "three recognized tests" for finding bad faith in connection with the filing of an involuntary petition:  "the improper purpose test, the improper use test, and the test modeled on Rule 9011 of the Federal Rules of Bankruptcy Procedure."  *Wortley v. Chrispus Venture Capital, LLC (In re Global Energies, LLC)*, 763 F.3d 1341, 1349 (11th Cir. 2014); see also *Gen. Trading, Inc. v. Yale Materials Handling Corp.*, 119 F.3d 1485, 1501-02 (11th Cir. 1997).  Here, the petition was filed in bad faith under each of those tests.

<b>i.    The Petition Was Filed for an Improper Purpose</b>

95.    Under the improper purpose test, "bad faith exists where the filing of the petition was motivated by ill will, malice or the purpose of embarrassing or harassing, the debtor." *Global Energies*, 763 F.3d at 1350 n.5; *Gen. Trading Inc.*, 119 F.3d at 1501.  For example, "[f]iling an involuntary bankruptcy petition deliberately to gain advantage in a business dispute is considered an improper purpose, <u>see</u> *Basin Elec. Power Coop. v. Midwest Processing Co.*, 769 F.2d 483, 486-87 (8th Cir. 1985), as is filing an involuntary bankruptcy petition in order to take control of a corporation or its assets, <u>see</u> *In re Better Care, Ltd.*, 97 B.R. 405, 412 (Bankr. N.D. Ill. 1989)."  *Global Energies*, 763 F.3d at 1349 n.5.

96.    Here, the involuntary petition was filed for an improper purpose because it was part of the Petitioner's scheme, using false signatures, to manufacture both claims and venue in an effort to invoke the bankruptcy process to delay or frustrate the Sale (and impede the Forfeiture Action) while shielding the "bad actors," Quaicoe and Aluko, from participation in the bankruptcy proceedings (and from likely arrest upon appearing in this District).  Petitioner had no claim against One57 prior to alleged execution of the One57 Ark Guaranty—less than one

month prior to the filing of the involuntary petitions against One57 and Borrower. The bad faith orchestration of the involuntary petition is further evidenced by the fact that Farooq acted as the CEO of the Petitioner and the manager of, inter alia, Borrower (One57's parent company) and One57. Such bad faith constitutes unmistakebale "cause" for stay relief (as well as dismissal of the bankruptcy case).

97.     As the Eleventh Circuit has instructed:

> Unmistakable manifestations of bad faith need not be based upon a finding of actual fraud, requiring proof of malice, scienter or an intent to defraud. **We simply require that the bankruptcy courts preserve the integrity of the bankruptcy process by refusing to condone its abuse.**

*Shell Oil Co. v. Waldron (In re Waldron)*, 785 F.2d 936, 941 (11th Cir. 1986) (emphasis added).

98.     Here, there are countless manifestations of bad faith and abuse of the bankruptcy process. Accordingly, this Court cannot condone such abuse and, therefore, should grant Movant relief from the stay.

### ii.     The Petition Constitutes an Improper Use of the Bankruptcy Process.

99.     Under the improper use test, "bad faith exists when a creditor uses a bankruptcy proceeding to accomplish objectives not intended by the Bankruptcy Code," such as the "improper use of the Bankruptcy Code as a substitute for customary collection procedures," Gen. Trading, 119 F.3d at 1501, or to "tak[e] over a debtor corporation and its assets," *Global Energies*, 763 F.3d at 1349 n.5; See Gen. Trading, 119 F.3d at 1501.

100.     The Petitioner is allegedly a collection company working to recover a contingent fee from whatever it recovers from Borrower's or One57's respective bankruptcy estates. The Petitioner's use of the bankruptcy process as a collection tool constitutes an improper use of the Bankruptcy Code. See *In re Phoenix-Piccadilly, Ltd.*, 849 F.2d 1393, 1194 (11th Cir. 1988) ("factors which evidence that the petition was filed to delay or frustrate the legitimate efforts of

secured creditors to enforce their rights" demonstrate "bad faith") (internal quotation marks omitted); *In re Albany Partners, Ltd.*, 749 F.2d 670, 674 (11th Cir. 1984) (when a party seeks "merely to delay or frustrate the legitimate efforts of secured creditors to enforce their rights, dismissal of the petition for lack of good faith is appropriate"); see also *Carco*, 113 B.R. at 740 ("It is also obvious to the Court, that One57's problems are principally with its secured creditors and that such disputes, including any claims that a forbearance agreement was reached with GRCC, should most appropriately be decided in the State Court Foreclosure Action rather than in the Bankruptcy Court.").

101.    Any question regarding whether the Petitioner, Borrower and One57 are working together to orchestrate the involuntary petitions is answered by examining the recent bankruptcy petition filed by Lightray.  On July 25, 2017, Farooq, as manager, signed a voluntary Chapter 11 petition for Lightray, thereby commencing bankruptcy case # 17-19338-RAM in this District. The Movant is one of only two creditors listed in Lightray's List of 20 Largest Unsecured Creditors.  See ECF No. 2, Case #17-19338-PGH.  Lightray did not even exist until it was formed under Florida law on July 6, 2017.  See Division of Corporations, Official Florida Website, Record #L17000144734.[17]

102.    On July 26, 2017, Farooq, in his capacity as CEO of the Petitioner, filed an involuntary Chapter 7 petition against an individual named "Kolawale" Aluko.  See Case # 17-19348-LMI.  According to the Forfeiture Complaint, "Kolawole" Aluko is the 100% owner of Borrower.  See Forfeiture Complaint at ¶ 23.  Aluko also is the other alleged creditor listed on Lightray's List of 20 Largest Unsecured Creditors yet is notably absent from Lightray's recently

---

[17]*See*

http://search.sunbiz.org/Inquiry/CorporationSearch/SearchResultDetail?inquirytype=EntityName&directionType=In itial&searchNameOrder=LIGHTRAYCAPITAL%20L170001447340&aggregateId=flal-l17000144734-f04a8fc1-6019-4835-b63f-0deced2bc077&searchTerm=lightray&listNameOrder=LIGHTRAY%20L130000543890.

filed bankruptcy schedules.  See ECF Nos. 2 & 11, Case #17-19338-RAM.  The involuntary petition against "Kolawale" Aluko is based upon documents allegedly signed by "Kolawale" Aluko.  See ECF No. 1, Case #17-19348-LMI.  Yet, the actual spelling of Aluko's first name, however, appears to be "Kolaw**o**le," not "Kolawale."  It is curious that all of the documents supporting the involuntary petition against Aluko misspell his name, including documents allegedly signed by him.  See ECF No. 1; Case #17-19348-LMI.

103.    Petitioner has designed a scheme to use involuntary petitions to manufacture venue (which does not exist) in this District and to enable the putative debtors to take advantage of the automatic stay and seek a discharge of their debts, either as individuals in Chapter 7 bankruptcies or in business cases converted to Chapter 11, without having to appear in any of the bankruptcy cases.

104.    The fact that the Petitioner is using the bankruptcy process for an improper purpose is further evidenced by the fact that there is no legitimate basis for venue of Borrower's or One57's bankruptcy case in this District.  Borrower is a BVI company.  Borrower's primary assets are not located in this District.  For example, its 65-meter yacht, the "Galactica Star," has not been in this District at any time during the 180 days prior to the filing of the involuntary petition against Borrower.  One57 is a New York entity.  One57's only major asset is a condominium unit located in New York City.  Thus, the bankruptcy cases of Borrower and One57 are not properly venued in this District.  See 28 U.S.C. § 1408.[18]

105.    Worse yet, by an email sent on July 18, 2017, Quaicoe advised Movant that "new directors herein copied" replacing IWM S.A. as director, would provide information regarding

---

[18] The Court may not retain an improperly-venued bankruptcy case.  See In re Penn-Mont Benefit Servs., Inc., 2013 WL 6405046, at *9 (Bankr. M.D. Fla. Dec. 06, 2013).  Instead, the Court must dismiss such a case or, upon request of a party in interest, transfer the case to the appropriate district if the court determines that transfer is in the interest of justice or for the convenience of the parties.  Id. at *8-10; Fed.R.Bankr.P. 1014(a)(2).

the resignation of IWM (for which Quaicoe was the CEO).  The "new director" copied on the email was "Mitch Pasin."  <u>See</u> July 18, 2017 Email from Quaicoe, a true and correct copy of which is attached to the Declaration as **Exhibit GG**.

106.    In September of 2015, this Court entered a nondischargeable judgment for fraudulent and willful and malicious conduct against Mitch Pasin.  See Final Judgment, *In re Indigo Lakes, LLC v. Mitchell Pasin (In re Mitchell Pasin)*, Adv. No. 10-3712-PGH, Case No. 10-32847-PGH (Sept. 25, 2015) (entering judgment in the amount of $270,025 and holding that it is nondischargeable under sections 523(a)(2), (a)(4) and (a)(6) of the Bankruptcy Code), a true and correct copy of which is attached to the Declaration as Exhibit **HH**.  The appointment of Pasin as a director puts Movant's collateral at even greater risk.

### iii.    The Petition Was Filed in Bad Faith Under a Rule 9011 Test.

107.    Under the test modeled on Rule 9011 of the Federal Rules of Bankruptcy Procedure, "bad faith exists, where a filing party (1) fails to make a reasonable inquiry into the facts and the law before filing and (2) files the petition for an improper purpose."  *Global Energies*, 763 F.3d at 1349 n.5; *Gen. Trading Inc.*, 119 F.3d at 1502.

108.    Here, the Petitioner and One57, at minimum, orchestrated the filing of the involuntary petition.  Indeed, Farooq acts for both the Petitioner, an alleged creditor, and One57, the debtor.  A cursory review of the signatures underlying the Petitioner's claim reveals their lack of genuineness.  Any doubt is extinguished by the fact that the One57 Ark Guaranty was purportedly executed almost two years after the document was drafted should have presented another "red flag" for the Petitioner.  Undeterred, the Petitioner and One57 employed those documents in their wrongful scheme to file an involuntary petition to avoid or delay the Sale.

109.    Moreover, the Petitioner apparently conducted little or no meaningful analysis of the appropriateness of venue under section 1408 of title 28, U.S. Code before filing the

involuntary petition.  As indicated above, venue of Borrower's and One57's bankruptcy cases is not proper in this District.

110.    For the foregoing reasons, the filing of the involuntary petition against Borrower, and the conversion of the case to a voluntary chapter 11, were part of a bad faith plan to invoke this Court's jurisdiction and venue without the "bad actors," Quaicoe and Aluko, subjecting themselves to this Court's jurisdiction and having to appear before this Court, in an obvious attempt to avoid discovery and likely arrest.  This Court should not countenance such conduct.

**3.    "Cause" Exists Because this Case Involves a "Two-Party" Dispute.**

111.    As indicated above, Petitioner's alleged claim was the result of the (alleged) eleventh-hour execution of the One57 Ark Guaranty.  Such an attempt to manufacture another claim against One57 is specious, at best.[19]  Stripped of its machinations, this bankruptcy case involves only One57 and the secured claim of Movant.  Thus, One57's bankruptcy case is simply a "two-party" dispute.  Moreover, that dispute was resolved by the Stipulation (Exhibit T) and the consensual Foreclosure Judgment (Exhibit U) in the Foreclose Action between One57 and Movant.  One57 and Movant had specifically agreed to the Sale of the One57 Property and process therefor.  The Sale was scheduled, by agreement of One57 and the Movant, for July 19th.

112.    As the District Court has recognized:

> The bankruptcy court may dismiss a case when that court is used as "an alternative to proceeding with pending State Court litigation to resolve what is essentially a two-party dispute."  In re Kass, 114 B.R. 308, 309 (Bankr. S.D. Fla. 1990).

In re GCC Realty Co., LLC, No. 9:16-CV-81277, 2017 WL 1100535, at *8 (S.D. Fla. Mar. 24, 2017).

---

[19] Moreover, the United States' Forfeiture Action (as discussed *infra*) will proceed unimpeded by this bankruptcy case because the Forfeiture Action is not stayed.

113. Here, the Petition (and now One57) attempt to use this Court to resolve "what is essentially a two-party dispute." See id. Therefore, this Court should grant Movant relief from the stay.

### 4. Waiver of the 14-Day Stay in Accordance with Bankruptcy Rule 4001(a)(3)

114. Movant also seeks waiver of the 14-day stay provided in Bankruptcy Rule 4001(a)(3). There is no reason to delay effectiveness of an order granting stay relief. Conversely, immediate stay relief is required to protect the uninsured collateral and to avoid the accrual of interest on the Loan at the current per diem rate of €21,016 (or $24,683).

### B. Alternatively, Movant Is Entitled to Adequate Protection of its Interest in the Collateral.

115. Section 361 of the Bankruptcy Code provides, in relevant part, that adequate protection may be provided by "requiring the trustee to make a cash payment or periodic cash payments . . . to the extent that the stay under section 362 of this title, use, sale, or lease under section 363 of this title. . . results in a decrease in the value of such entity's interest in such property." 11 U.S.C. § 361(1).

116. Here, none of the principal of the Loan has been repaid, and interest on the Loan continues to accrue at the rate of approximately €670,000 (or $786,000) per month. Movant is entitled to adequate protection to protect against diminution in the value of its collateral. Accordingly, to the extent that the Court does not grant relief from the automatic stay, the Court should provide adequate protection of Movant's interests by (a) requiring One57 to (i) timely pay post-petition monthly interest to Movant at the current rate of interest (default rate), (ii) maintain and timely pay for liability and hazard insurance at all times for the One57 Property as required by the Loan Documents, (iii) timely pay all common area maintenance charges relating to the One57 Property and (b) conditioning the stay on One57 timely making all such payments,

continually maintaining liability and hazard insurance as required by the Loan Documents, and continually paying all condominium association fees and expenses relating to the One57 Property.

## NO PRIOR REQUEST

117.    No prior request for the relief sought in this Motion has been made to this or any other Court.

WHEREFORE, Movant respectfully requests that this Court enter an order, substantially in the form attached to the Declaration as Exhibit **EE**, (i) granting relief from the automatic stay pursuant to section 362(d)(1) of the Bankruptcy Code to allow Movant to complete the foreclosure Sale of the One57 Property and apply the proceeds to the balance of the Loan, or (ii) in the alternative, providing adequate protection of Movant's interest in the collateral by (a)  requiring One57 to (1) timely pay post-petition monthly interest to Movant at the current rate of interest (default rate), (2) maintain and timely pay for liability and hazard insurance at all times for the One57 Property as required by the Loan Documents, and (3) timely pay all common area maintenance charges relating to the One57 Property and (b) conditioning the stay on One57 timely making all such payments, continually maintaining liability and hazard insurance as required by the Loan Documents, and continually paying all condominium association fees and expenses relating to the One57 Property, (iii) waiving the fourteen day stay set forth in Bankruptcy Rule 4001(a)(3), and (iv) granting such further relief to Movant as is appropriate.

I HEREBY CERTIFY that a true and correct copy of the foregoing has been served on this 17th day of August, 2017 upon all interested parties registered to receive notice via this Court's CM/ECF electronic notification system and via First Class U.S. Mail upon One57 79

Inc., 3329 Flamingo Drive, Miami Beach, FL 33140, One57 79 Inc. c/o Ronald Lewis, Esq., 165

E. Palmetto Park Road, Suite 200, Boca Raton, FL 33432, Campion Maverick, Inc., 9551 East

Bay Harbor Drive, Bay Harbor, FL 33154, Campion Maverick, Inc., c/o Joel Aresty, Esq., 309

1st   Avenue South, Tierra Verde, FL 33715, and the Office of the U.S. Trustee, 51 SW 1st

Avenue, Suite 1204, Miami, FL 33130.

### CERTIFICATE PURSUANT TO LOCAL RULE 9011-4(B)(1)

I hereby certify that I am admitted to the Bar of the United States District Court for the

Southern District of Florida, and I am in compliance with the additional qualifications to practice

in this court set forth in Local Rule 2090-1(A).

Date: August 17, 2017                    Respectfully submitted,
                                         GRAY ROBINSON

                              By:    */s/ Leyza F . Blanco*
                                     Leyza F. Blanco
                                     Florida Bar Number 104639
                                     Fernando J. Menendez Jr.
                                     Florida Bar Number 0018167
                                     333 S.E. 2nd Avenue
                                     Suite 3200
                                     Miami, Florida 33131
                                     Phone:  305-416-6880
                                     Facsimile:  305-416-6887
                                     Email: Fernando.Menendez@gray-
                                     robinson.com

                                         and

                                     Kurt F. Gwynne (pro hac vice)
                                     REED SMITH LLP
                                     1201 N. Market Street, Suite 1500
                                     Wilmington, DE 19801
                                     Telephone:  (302) 778-7550
                                     Facsimile:  (302) 778-7575
                                     Email:  kgwynne@reedsmith.com

                                     *Counsel to Movant,*
                                     *Banque Havilland S.A.*

**EXHIBIT EE**

<u>Proposed Order</u>

(Attached)

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

| | |
|---|---|
| IN RE: | Chapter 11 |
| ONE57 79 INC., | Case No. 17-18433-RAM |
| Debtor. | |

**ORDER GRANTING MOTION OF BANQUE HAVILLAND S.A.**
**FOR RELIEF FROM THE AUTOMATIC STAY**

Upon the *Motion of Banque Havilland S.A. for An Order Granting (I) Relief from the Automatic Stay Pursuant to 11 U.S.C. § 362(d)(1), or, in the Alternative, (II) Adequate Protection Pursuant to 11 U.S.C. § 361* (the "Motion");[1] and the Court having reviewed the Motion; and having heard the statements of counsel at the hearing on the Motion; and the Court finding that:  (i) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; (ii) notice of the Motion and the hearing thereon was sufficient under the circumstances; and (iii) the legal and factual bases set forth in the Motion establish "cause" for the relief granted herein under section 362(d)(1) of the Bankruptcy Code; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.     The Motion is GRANTED as set forth herein.

2.     Pursuant to section 362(d)(1) of the Bankruptcy Code, the automatic stay shall be, and hereby is, lifted such that Movant may proceed with the foreclosure sale of the real property commonly known as 157 West 57th Street, Unit 79, New York, New York 10019 (the "One57

---

[1] Capitalized terms used but not defined in this order have the meanings given in the Motion.

Property") and apply the proceeds thereof in accordance with applicable New York law and the applicable Loan Documents to the amounts owed to Movant by Borrower and One57.

3.      The fourteen day stay set forth in Bankruptcy Rule 4001(a)(3) is waived for the reasons set forth in the Motion.

4.      This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation and/or interpretation of this Order.

###

Submitted by:
Leyza F. Blanco, Esq.
GrayRobinson, P.A.
333 SE 2nd Avenue, Suite 3200
Miami, FL 33131
Leyza.Blanco@gray-robinson.com
Telephone:      (305) 416-6880
Facsimile:      (305) 416-6887

Copies furnished to:
Leyza F. Blanco

*(Attorney Blanco is directed to serve the foregoing document upon all interested parties and file a Certificate of Service with this Court)*